240 So.2d 562 (1970)
Willie WASHINGTON and Barbara Ann Bradford
v.
DAIRYLAND INSURANCE COMPANY.
No. 4124.
Court of Appeal of Louisiana, Fourth Circuit.
November 2, 1970.
*563 John R. Frenkel, J. Hunter Bienvenu and Elliott G. Courtright, Metairie, for plaintiffs-appellants.
Loeb, Dillon & Livaudais, Gerard M. Dillon, New Orleans, for defendant-appellee.
Before SAMUEL, TAYLOR and LeSUEUR, JJ.
SAMUEL, Judge.
This is a suit for recovery of medical expenses, in the amounts of $320 for plaintiff Willie Washington and $395 for plaintiff Barbara Ann Bradford, together with penalties and attorney's fees, under the medical payment coverage of an automobile liability insurance policy issued by the defendant to Washington. After trial there was judgment in favor of the defendant, dismissing plaintiffs' suit. Plaintiffs have appealed.
The facts were stipulated and are not in dispute. On December 23, 1968 plaintiffs were injured in an automobile accident and, as a result, incurred medical expenses in the amounts in suit. The insured automobile, being driven by Washington and in which Bradford was a passenger, was struck in its rear by a truck owned by William B. Harper, d/b/a Catalina Swimming Pools, and operated by his employee, Robert E. Jackson, both of whom were insured against liability by Aetna Casualty & Surety Company. The accident was caused solely by the negligence of Jackson.
Through their attorney plaintiffs made demand on defendant for their medical expenses and subsequently submitted proofs of loss. However, on June 5, 1969, prior to any payment by the defendant, both plaintiffs settled their claims against the truck driver, his employer and their insurer. Aetna paid $1,993.03 to Washington and $2,235.00 to Bradford and in consideration thereof both plaintiffs executed documents fully releasing and discharging Jackson, Harper and Aetna from any and all liability resulting from the accident and the injuries incurred therein. The releases clearly include the medical expenses in suit.
The policy issued to Washington by the defendant was in force at the time of the accident. Paragraph 17 of the Conditions of that policy, which provides for subrogation of rights of recovery reads as follows:
"In the event of any payment under this policy, the company shall be subrogated to all the Insured's rights of recovery therefor against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.
In the event of any payments under the Medical Expense Coverage of this policy, the company shall be subrogated to all the rights of recovery therefor which the *564 injured person or anyone receiving such payment may have against any person or organization and such person shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. This provision shall not be applicable with respect to any payments when the law of the state where the Insured resides prohibits subrogation relative to such payments."
The judgment appealed from is based on the settled rules that a provision in a policy providing for subrogation of the insurer to the rights of the insured upon payment of a claim under the policy by the former to the latter is effective as a conventional subrogation[1] and that when an insured releases a third-party tort feasor, thus defeating the subrogation rights of his insurer, the insured loses his right to recover under the policy.[2]
These rules are applicable here. Under the above quoted policy provision, upon payment by the defendant to them, plaintiffs were obligated to subrogate their rights of recovery against the tort feasor, his employer and his insurer and plaintiffs were further obligated to "do whatever else is necessary to secure such rights." As a result of the settlements and releases plaintiffs no longer had any right to recover against those three and there was nothing remaining which could be subrogated. In the absence of other considerations, plaintiffs cannot recover their medical expenses from the defendant.
In addition to argument relative to the above stated rules, plaintiffs contend: (1) as a result of its bad faith in encouraging plaintiffs to make an early settlement of their claims against the tort feasor, his employer and their insurer, defendant is estopped from refusing to pay the medical expenses; (2) subrogation of such claims cannot be accomplished because the same is against the public policy of this state; (3) plaintiff Bradford is not bound by the policy's requirement of subrogation because she is a third-party beneficiary and not a party to the insurance contract; and (4) in any event, attorney's fees should be allowed under LSA-R.S. 22:658 for failure to make timely payment. We do not agree with any of these contentions.
The record reveals the following facts with regard to the first contention relative to estoppel: Although plaintiffs previously had notified defendant of the accident and had mailed to it a report thereof, they did not present proofs of loss until May 6, 1969 when their attorney wrote defendant's agent enclosing proof of the medical expenses and demanding payment thereof. On May 19, 1969 a defendant claims examiner wrote that attorney requesting, among other things, the name of the insurer of the tort feasor's employer and information as to whether or not plaintiffs had made a settlement with that insurer. On May 22, 1969 plaintiffs' attorney answered the May 19 letter but failed to include either the name of the employer's liability insurer or information regarding whether or not a settlement had been reached. On May 26, 1969 defendant again requested that information. On May 28 the attorney furnished the name of Aetna as the insurer and stated that a settlement was being negotiated with Aetna. On June 6, 1969 defendant refused to pay the claim because of the settlements reached with, and releases given to, the tort feasor, his employer and their insurer.
Noting that all of the alleged encouragement to settle the claims, consisting only of requests for the name of the insurer and information regarding a settlement, *565 was contained only in correspondence to and with plaintiffs' attorney, we do not find any evidence of bad faith. Nor do we find that those requests in any way mislead plaintiffs into entering the settlements.
Plaintiffs' second contention relative to public policy is based solely on a reference, in argument and brief, to an alleged January 22, 1969 ruling of the Louisiana Insurance Rating Commission, Casualty and Surety Division, which he states is contained in a cited volume of that body and which he contends, for the first time in Louisiana, permits the subrogation of rights under the medical payments clause of an automobile insurance policy. We cannot consider this alleged ruling. The point was not made in the trial court and the ruling was not offered or introduced in evidence. While LSA-C.C.P. Art. 1393 provides that an official record of a state agency "* * * when admissible for any purpose, may be evidenced by an official publication thereof.", the article clearly contemplates that those records must be put into evidence. We cannot take judicial notice of such an official record.[3] Therefore, as the record before us is devoid of any evidence that the subrogation provisions are or were contrary to the public policy of this state, and as we have not been cited to any authority, statutory or jurisprudential, establishing a public policy as asserted by plaintiffs, we cannot and do not hold the subrogation provisions in the policy in suit are against our public policy.
The third contention, relative to the plaintiff Bradford and the argued fact that she is not bound by the subrogation provisions because she is a third-party beneficiary, is clearly without merit. As a third-party beneficiary she has no rights under the insurance contract except such as are contained therein. She must accept the medical payments coverage in its entirety, including its subrogation provisions, and she is bound thereby to the same extent as she is bound by the policy's limits.
Plaintiffs' fourth contention, for attorney's fees under LSA-R.S. 22:658 because of failure to make timely payment, also is clearly without merit. That statute subjects the insurer to a penalty and attorney's fees for failure to pay a claim within 60 days after receipt of satisfactory proofs of loss and demand when such failure is arbitrary, capricious or without probable cause. As we have pointed out, in the instant case plaintiffs' attorney mailed the first proofs of loss to the defendant on May 26, 1969 and defendant's obligation to pay the medical expenses ceased to exist on June 6, 1969 when plaintiffs entered into the settlements and executed the releases. Since the time lapse between those two dates was far less than 60 days, there was no failure to make timely payment and LSA-R.S. 22:658 is inapplicable.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.
NOTES
[1] Maryland Casualty Company v. Marquette Casualty Co., La.App., 143 So.2d 249; Union Indemnity Co. v. Crow, 14 La.App. 197, 127 So. 35; Maryland Casualty Co. v. Muller, 9 La.App. 700, 119 So. 764.
[2] Moore v. Motors Insurance Corporation, La.App., 152 So.2d 404; Polk Chevrolet Company v. Salario, La.App., 132 So.2d 115; Travelers Fire Ins. Co. v. Ackel, La.App., 29 So.2d 617.
[3] Francis v. Texas & Pacific Railway Emp. Hosp. Ass'n, La.App., 148 So.2d 118.