358 So.2d 665 (1978)
John J. LEGENDRE and Catherine Lasseigne Legendre
v.
Wally RODRIGUE and the Travelers Insurance Company.
No. 11686.
Court of Appeal of Louisiana, First Circuit.
February 13, 1978.
Writ Refused March 27, 1978.
*667 Floyd J. Falcon, Jr., Dodd, Hirsch, Barker, Avant & Wall, Baton Rouge, for plaintiffs and appellees.
Hunt B. Downer, Jr., Waitz, Weigand & Downer, Houma, for the Travelers Ins. Co. and appellee.
Wilbert J. Tauzin II, Thibodaux, for defendant Wally Rodrigue and appellee.
Paul M. Batiza, Thibodaux, for State Farm Mut. Auto. Ins. Co. and appellant.
Before BLANCHE, COVINGTON and CHIASSON, JJ.
CHIASSON, Judge.
Plaintiffs, John and Catherine Legendre, were involved in an automobile accident with defendant, Wally Rodrigue, resulting in serious injuries and large medical expenses. Plaintiffs were insured by State Farm Mutual Automobile Insurance Company (State Farm) with policy liability limits of $25,000/$50,000 and uninsured motorist coverage of $5,000/$10,000. Wally Rodrigue was insured by The Travelers Insurance Company (Travelers) with policy limits of $5,000/$10,000 for both liability and uninsured motorist coverages.
Plaintiffs first filed suit against Wally Rodrigue and his insurer and thereafter amended their petition to sue their own insurer, State Farm, under the uninsured motorist (U.M.) provisions of their policy. The basis for this claim was alleged to be the failure of State Farm to advise plaintiffs that they were entitled to U.M. coverage in an amount not less than their liability limits.
State Farm filed a motion for summary judgment to plaintiffs' claim and also filed an intervention for subrogation in the amount of $9,174.90 which it had paid to plaintiffs under the collision and medical pay coverages of the policy.
The trial court held that defendant Rodrigue was at fault, denied State Farm's motion for a summary judgment and its intervention, and construed Act 137 of 1972 amending La.R.S. 22:1406 as requiring a judicial reformation of plaintiffs' U.M. coverage to increase the amount thereof to the liability limits of their policy. The trial court granted judgment in favor of plaintiff, John Legendre, and against the defendants, Wally Rodrigue, Travelers, and State Farm, in solido, in the sum of $150,293.14, together with legal interest from date of demand until paid. The judgment against Travelers and State Farm was limited to $5,000 and $25,000 respectively, plus interest on the entire judgment from the date of signing of the judgment until payment of the policy principal. The same type of judgment was rendered in favor of Catherine Legendre in the principal sum of $10,486.
Plaintiffs and the original defendants have not appealed nor have they answered the appeal taken by State Farm.
State Farm contends that the trial court erred in the following respects:
(1) The lower court erred in not granting State Farm's motion for summary judgment;
(2) The lower court erred in condemning State Farm to pay interest on the entire judgment from the signing of the judgment;
(3) The lower court erred in denying State Farm's intervention claim.
The liability and quantum aspects of the trial court's judgment are therefore final.
The accident occurred on September 29, 1973, and the law applicable to U.M. coverage at that time was La.R.S. 22:1406 as amended by Act 137 of 1972 which provided:
"D. (1)(b) Any insurer delivering or issuing an automobile liability insurance policy referred to herein, shall also permit the insured, at his request, to increase the coverage applicable to uninsured motor vehicles provided for herein to any amount not in excess of the limits of the automobile liability insurance carried by such insured."
After correctly holding that the case of Barbin v. United States Fidelity and Guaranty Co., 315 So.2d 754 (La.1975) was not controlling in this case, the trial court considered *668 the meaning of Act 137 of 1972 and held:
"But in now considering this specific point, the 1972 amendment did state that the insurer `shall' also permit and did not use the discretionary `may' also permit. It would seem to this court that the legislative intent was that the insurer (sic) must be apprised of the opportunity which this amendment offered him to increase the limits of his uninsured motorist coverage. If he was not aware of this opportunity, if he did not know that he was entitled to this additional coverage, then he could not `request' that his coverage be increased. Even accepting the argument of counsel for State Farm that the Barbin case did not hold a mandatory duty to provide this coverage unless rejected, surely it was the legislative intent for the insured to be made aware of this opportunity, and State Farm `as a matter of policy' in not apprising its policy holder of this opportunity, failed in its fiduciary responsibility to its insured. It may well have been, that had it apprised the plaintiffs of this right to increase his coverage he would have declined and this problem would not have arisen in this case. He might have elected to stay with his same coverage of $5,000.00/$10,000.00 and then indeed Wally Rodrigue would not be an `uninsured' motorist, but it is just as logical to assume that when the plaintiff, in transferring the insurance to his new car, raised his limits of liability that he would have also welcomed an opportunity to request an increase in his uninsured motorists coverage if he had been aware that $5,000.00/$10,000.00 was no longer the maximum limits."
The trial court erred in holding that State Farm had a fiduciary responsibility to the plaintiffs herein. The relationship between State Farm and plaintiffs was that of seller and buyer which does not create any fiduciary duty to advise of any change in the law. Nor does Act 137 require any such disclosure, but only requires that, at the request of its insured, State Farm is obligated to sell U.M. coverage up to the limits of the liability policy. No such request was ever made by plaintiffs and therefore there could be no refusal on the part of State Farm to provide such coverage.
Act 137 of 1972 is clear and free from ambiguity and should be applied as written. Legislative intent can only be considered when the law is ambiguous or subject to two reasonable interpretations. La. Civil Code Art. 13; La.R.S. 1:4; Hebbler v. New Orleans Fire Department, 310 So.2d 113 (La.1975); Louisiana Television Broadcasting Corp. v. Total C. A. T. V., 341 So.2d 1183 (La.App. 1st Cir. 1976); Writ refused, 343 So.2d 1076 (La.1977).
Plaintiffs' U.M. coverage should have been limited to the amount of $5,000/$10,000, and under La.R.S. 22:1406 D.(2)(b) in effect in 1973,[1] Wally Rodrigue was not an uninsured motorist and plaintiffs cannot recover under the U.M. provisions of their policy with State Farm.
La.R.S. 22:1406 was again amended by Act 154 of 1974 and if this amendment were applicable to this case the judgment of the trial court would be correct. However, the 1974 Act is not to be applied retroactively. Doucet v. Insurance Company of North America, 302 So.2d 731 (La.App. 3rd Cir. 1974), Writ refused, 305 So.2d 134 (La. 1974).
The trial court denied State Farm's subrogation claim on the theory that State Farm was solidarily liable with the other defendants. Because we find that State Farm is not liable to plaintiffs, we need not address the issue of solidary liability. State Farm's subrogation claims are amply supported by the record and judgment should have been rendered in its favor.
*669 With regard to State Farm's subrogation claims, the record shows that State Farm paid to plaintiffs the total sum of $9,174.90, of which amount $3,678 was paid for collision coverage and $5,496 for medical payments. In its petition for intervention, State Farm prays that any damages recovered by plaintiffs from Travelers be apportioned in the judgment so that the claim of State Farm for the foregoing benefits which it paid to its insured and for which it was subrogated would take precedence over that of plaintiffs.
State Farm's policy of insurance has two different subrogation clauses, one for amounts paid by it as a result of physical damage (collision) and the other for medical payments. The clauses read essentially the same, and where pertinent, provide:
"* * * [T]he company shall be subrogated to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery which the injured person or anyone receiving such payment may have against any person or organization and such person shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. * * *" (Record, p. 108, Policy, p. 15)
Additionally, State Farm had plaintiffs execute an instrument entitled "Subrogation Receipt," the terms of which provide:
"* * * [F]or the consideration aforesaid [collision and medical payments] and to the extent of said payment the undersigned further subrogates to said company all rights which the undersigned may have against any person or persons arising out of the loss mentioned above, and for the enforcement of such rights said insurer is hereby authorized to take any action which may be necessary either in law or in equity in its own name or that of the undersigned * * *." (Record, p. 220)
The foregoing constitutes the conventional subrogation agreements relied upon by State Farm.
As authority for its claim of preference State Farm cites only La.R.S. 23:1103 which we hold to be a special statute dealing with and limited to subrogation under the Workmen Compensation Statute, and not applicable or controlling in the case at bar.
The general rule is stated in R.C.C. Art. 2162 which expresses a contrary rule of preference. R.C.C. Art. 2160 defines conventional subrogation, R.C.C. Art. 2161 defines legal subrogation and R.C.C. Art. 2162 thereafter provides:
"The subrogation established by the preceding articles, takes place as well against the sureties, as against the debtors. It can not injure the creditor, since, if he has been paid but in part, he may exercise his right for what remains due, in preference to him from whom he has received only a partial payment."
The plaintiffs claim in this case is also for damages for personal injuries and no subrogation has been granted for that portion of their claim. The payments made by State Farm [collision and medical] for which it received subrogations from plaintiffs, make plaintiffs and State Farm partial subrogor and subrogee. Bell v. Duplessis, 150 So.2d 114 (La.App. 4th Cir. 1963).
The subrogations held by State Farm are therefore for only part of plaintiffs' loss, and in such case, plaintiffs have a preference for what remains due to them over the claim of State Farm from whom they have received only a partial payment. Gumbell v. Boyer, 46 La.Ann. 1499, 16 So. 465 (1894); First National Bank of Lafayette v. Stovall, 128 So.2d 712, (La.App. 4th Cir. 1961); Weber v. Press of H. N. Cornay, Inc., 144 So.2d 581 (La.App. 4th Cir. 1962).
We are aware of the case of Morgan v. Southern Farm Bureau Casualty Insurance Company, 223 F.Supp. 996 (W.D.La.1963), affirmed, 339 F.2d 755 (5th Cir. 1964), wherein the U.S. District Court held that a subrogee was only entitled to share pro rata in the distribution of the limited sum available. We note that this case was decided on equity because of plaintiff's and intervenor's failure to cite any authority for their respective contentions.
*670 Equity can only be resorted to where there is no express law on the subject. R.C.C. Art. 21. We therefore hold that the positive law, R.C.C. Art. 2162, is controlling herein.
The judgment of the trial court is reversed insofar as State Farm is held liable unto plaintiffs, and judgment is rendered in favor of State Farm Mutual Automobile Insurance Company and against Wally Rodrigue in the sum of $9,174.90, together with legal interest thereon from date of judicial demand until paid and all costs. Said judgment is subordinate to the judgment in favor of plaintiffs.
REVERSED AND RENDERED.
NOTES
[1] "(b) For the purposes of this coverage the term `uninsured motor vehicle' shall, subject to the terms and conditions of such coverage, also be deemed to include an insured motor vehicle when the automobile liability insurance coverage on such vehicle is less than the uninsured motorist coverage carried by an insured."