370 So.2d 113 (1979)
Charles Congreve CARTER, III
v.
Gaston J. BORDELON, Jr., et al.
Charles Congreve CARTER, Jr. and Marilyn B. Carter
v.
Gaston J. BORDELON, Jr., et al.
Nos. 12448, 12449.
Court of Appeal of Louisiana, First Circuit.
March 5, 1979.
*114 Henry A. Mentz, Jr. and Rodney C. Cashe, Hammond, for Charles Congreve Carter, III.
Phillip Gattuso, Gretna, for Gaston J. Bordelon, Jr.
Daniel Atkinson, Baton Rouge, for United States Fidelity and Guaranty Co.
Horace C. Lane, Baton Rouge, for United States Fidelity and Guaranty Co. and Bordelon.
Tom H. Matheny and Pittman & Matheny, Hammond, for Louisiana Health Service & Indemnity (appellant-intervenor).
Before LANDRY, CHIASSON and SARTAIN, JJ.
LANDRY, Judge.
Intervenor-Appellant Louisiana Health Service and Indemnity Company (also known as, and hereinafter referred to as, Blue Cross), medical and hospital insurer of Charles Congreve Carter III (now deceased), appeals from judgment subordinating Blue Cross' subrogation rights to funds paid decedent's estate and surviving parents by the insurer of defendant tort-feasor Bordelon and by decedent's uninsured motorist insurer, for personal injuries sustained in an automobile accident and resulting in decedent's death. We affirm.
On October 19, 1977, Charles Carter III sustained severe personal injuries in an automobile accident caused by the negligence of defendant Bordelon. The mishap occurred while Bordelon was driving a truck owned by defendant Bordelon Homes & Lumber Company, Inc. On November 9, 1977, suit was instituted on behalf of Charles Carter III to recover for personal injuries, medical expense, and lost earnings. United States Fidelity and Guaranty Company (U.S.F.& G.) was made defendant in the action as liability insurer of the Bordelon vehicle and as uninsured motorist insurer of plaintiff's automobile.
Charles Carter III died on January 15, 1978, of injuries sustained in the accident. His parents, Charles Carter, Jr. and Marilyn B. Carter, were substituted as plaintiffs in decedent's survival action and, in addition, instituted a separate action for wrongful death damages. Both actions were consolidated for trial.
Pursuant to its hospital, surgical, and medical insurance policy issued to decedent, *115 Blue Cross paid decedent's succession $107,577.80 for medical expense incurred by decedent prior to his demise. Contemporaneously with the payment, Blue Cross obtained from Charles Carter, Jr. a subrogation agreement which pertinently provides:
". . . and for the consideration aforesaid and to the extent of said payment the undersigned further subrogates to said company all rights which the undersigned may have against any person or persons arising out of the loss mentioned above, and for the enforcement of such rights said insurer is hereby authorized to take any action which may be necessary either in law or in equity in its own name or that of the undersigned. . ."
Also germane is the following provision of Blue Cross' policy:
"F. In the event of any payment under this Contract, the Plan will be subrogated to all the Member's rights of recovery to the extent of such payment against any person or other legal entity. The Member will execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Member shall do nothing after loss to prejudice such rights."
Blue Cross intervened in plaintiffs' consolidated actions seeking enforcement of its subrogation rights to the extent of the $107,577.80 paid for medical expenses incurred by decedent.
Prior to trial on the merits of plaintiffs' consolidated actions, a settlement was reached pursuant to which all defendants were released from liability subject to certain stated conditions.
The settlement agreement, evidence by a written stipulation of record and incorporated into the judgment below, specifies as follows:
"1. Gaston J. Bordelon and Bordelon Homes and Lumber Company agreed to pay the total sum of $15,000.00, which payment was to be applied directly to plaintiffs in both the survival action and wrongful death suit, and Blue Cross Insurance Company specifically waived any rights to this payment.
2. $10,000.00 under the USF&G liability policy issued to Gaston J. Bordelon and Bordelon Homes and Lumber Company was paid and deposited into the registry of the Court.
3. $200,000.00 in U/M benefits under the USF&G policy issued to plaintiff, Charles C. Carter, Jr., was paid and appropriated as follows:
a. $97,000 to be paid in the registry of the Court.
b. $103,000.00 paid directly to plaintiffs in both the survival action and wrongful death action.
4. The pain and suffering of Charles C. Carter, III, in the survival suit was stipulated to be in excess of $300,000.00.
5. The pain and suffering of the plaintiffs in the wrongful death suit, for the loss of love and affection of their son, was stipulated to be the sum of $100,000.00 or $50,000.00 to each surviving parent.
6. The value of medical expenses incurred was stipulated to be in the sum of $137,154.74.
7. Blue Cross Insurance Company waived any subrogation rights to any amount paid under its policy in excess of $107,577.80.
8. Loss [of] wages incurred by Charles C. Carter, III, was stipulated at the sum of $2,700.00.
9. The court was to decide upon the appropriation of the sum of $107,000.00 deposited into escrow, in whole or in part to plaintiffs in the survival action and wrongful death action or Blue Cross Insurance Company under its petition for intervention."
As indicated by the above stipulation, the sole question is the proper allocation of the $107,000.00[1] deposit consisting of $10,000.00 *116 deposited by U.S.F.& G. as liability insurer of the tort-feasor, Bordelon, and his employer, and $97,000.00 paid by U.S.F.& G. as plaintiffs' uninsured motorist insurer. The trial court held that plaintiffs in the survival and wrongful death actions were entitled to be paid the entire deposit by preference. In so holding the trial court was influenced principally by the stipulation fixing the value of decedent's pain and suffering prior to his death at $300,000.00 and establishing the value of the survivors' loss of love and affection at a total of $100,000.00. The trial court reasoned there was no dual recovery of medical expenses because the combined general damages due in the consolidated actions exceeded $400,000.00 whereas plaintiffs' total recovery from all defendants aggregated only $225,000.00. Relying on Legendre v. Rodrigue, 358 So.2d 665 (La.App. 1st Cir. 1978), the trial court held plaintiffs' total general damages due in the survival action payable by preference over Blue Cross' right to reimbursement or subrogation. The trial court reasoned further that Blue Cross was not entitled to subrogation rights as to any of the damages allocated to the wrongful death action because no medical payments were made directly to plaintiffs therein. While we disagree with this latter reasoning of the trial court, for reasons hereinafter set forth, we affirm its judgment.
Blue Cross contends the lower court erred in: (1) failing to recognize that an insurer, who pays medical benefits to its insured pursuant to a medical care policy, is entitled to reimbursement from funds collected from a tort-feasor; and, (2) failing to recognize that a medical payment insurer granted a conventional subrogation by its insured, is entitled to preferential recovery from the insured or tort-feasor.
In support of its claim for reimbursement from Appellees out of funds provided by the tort-feasor, Blue Cross relies upon Harris v. Huval Baking Company, 265 So.2d 783 (La.App. 3d Cir. 1972); Liberty Mutual Insurance Company v. Weinberger, 329 So.2d 254 (La.App. 4th Cir. 1976). We note, however, that the bulk of the funds in this case were not derived from or contributed by the tort-feasor but from plaintiffs' uninsured motorist insurer who contributed $97,000.00 of the $107,000.00 involved.
In Harris v. Huval Baking Company, supra, the insurance contract provided medical, hospital, and surgical benefits for employees of a railroad. Plaintiff therein, a railroad employee, recovered medical benefits from the insurer for injuries sustained in an automobile accident. Plaintiff sued the third party tort-feasor and the insurer intervened seeking preferential reimbursement out of any amounts recovered from the tort-feasor. Based on the insurer's by-laws, the court found that the agreement contemplated that medical payments, in the event of injury caused by a third party, were to be paid only until such time as recovery could he had against the third party, at which time the insurer would be repaid. No similar provision is involved herein and there is thus no basis for the claim that reimbursement is due from plaintiffs.
Liberty Mutual Insurance Company v. Weinberger, supra, involved a defendant who was a guest passenger who received medical expenses as an occupant of his host's vehicle which was involved in a two-car collision. The host's policy provided for reimbursement to the insurer out of any recovery from a third person legally liable for the injury giving rise to medical payment. Defendant refused to make reimbursement contending that such a reimbursement would contravene public policy. In rejecting this argument, the court stressed the public advantage in the form of reduced premiums in consideration of the agreement to reimburse the insurer out of recovery from a third party tort-feasor. The Blue Cross policy, however, does not purport to require reimbursement as such from the insured. Moreover, we are not here concerned with reimbursement by the insured but rather with subrogation of the insured's right of recovery.
*117 Appellant's claim to subrogation is based primarily on Brown v. Zito, 333 So.2d 649 (La.App. 4th Cir. 1976) and Hartford Accident & Indemnity Company v. Byles, 280 So.2d 624 (La.App. 3d Cir. 1973), which allegedly hold that an insurer having a conventional subrogation from its insured is entitled to preferential recovery from the insured or tort-feasor to the extent of medical payments made to the insured. We note, however, that the issue in Byles, supra, as stated therein by the court was "whether Hartford is legally subrogated to the claim of its insured against defendant Byles." The issue here is conventional subrogation whereas the issue in Byles was whether there was in fact a legal subrogation. In Brown v. Zito, supra, the issue was one of proof, namely, whether the insurer's alleged subrogation claim could be recognized at all considering the record contained no evidence of a policy or cancelled drafts or other evidence of a conventional subrogation.
In support of its claim of preferential payment, Appellees rely upon Legendre v. Rodrique, supra, and La.C.C. Article 2162. In Legendre v. Rodrique, plaintiffs, who sustained personal injuries in an automobile accident caused by the negligence of a third party tort-feasor, were paid $9,174.90 under the collision and medical pay provisions of their own liability insurance coverage by State Farm Mutual Automobile Insurance Company. The insurer, State Farm, intervened in plaintiffs' action against the third party tort-feasor seeking subrogation recovery from any amounts obtained by plaintiffs. Subrogation was sought by State Farm by virtue of subrogation clauses contained in both the collision and medical pay clauses of the policy, which provisions were as follows:
"`* * * [T]he company shall be subrogated to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery which the injured person or anyone receiving such payment may have against any person or organization and such person shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. * * *'"
In addition, the plaintiff in Legendre, supra, executed a "Subrogation Receipt" which pertinently provided:
"`* * * [F]or the consideration aforesaid [collision and medical payments] and to the extent of said payment the undersigned further subrogates to said company all rights which the undersigned may have against any person or persons arising out of the loss mentioned above, and for the enforcement of such rights said insurer is hereby authorized to take any action which may be necessary either in law or in equity in its own name or that of the undersigned * * *.'"
The issue in Legendre, supra, was whether the injured plaintiffs or their insurer State Farm were preferred as to the proceeds of a $160,779.14 judgment obtained by plaintiffs against the third party tort-feasor and his insurer. In Legendre, we recognized State Farm's subrogation rights and rendered judgment in favor of State Farm against the tort-feasor and his insurer. We also held, however, that the subrogation in favor of State Farm was a partial subrogation pursuant to La.C.C. Article 2162, which provides:
"The subrogation established by the preceding articles, takes place as well against the sureties, as against the debtors. It can not injure the creditor, since, if he has been paid but in part, he may exercise his right for what remains due, in preference to him from whom he has received only a partial payment."
Applying Article 2162, above, in Legendre, supra, we held State Farm's subrogation rights were subordinate to the rights of plaintiffs against the tort-feasor involved. In Legendre, we found the subrogation partial because although plaintiffs subrogated their claims for collision damage and medical payments, plaintiffs had not subrogated their claims for personal injuries.
We see no factual distinction between the instant case and Legendre, supra, and hold the cited authority to be dispositive of the *118 case at hand. As in Legendre, plaintiffs here are seeking more than medical payments by plaintiffs' insurer. Plaintiffs are asking for damages for pain and suffering of decedent (which is stipulated to be far in excess of the amount claimed by subrogation herein), loss of wages, funeral expenses, and loss of love and affection. Applying Legendre, we hold that Blue Cross' subrogation being only partial, plaintiffs are entitled to recover the amount due them under the judgment in preference to Appellant's subrogation claim.
We find no substance in Appellant's attempt to distinguish Legendre, supra, on the ground that the language of the subrogation instruments involved therein indicated intent to effect only a partial subrogation. Upon reconsideration of the instruments in Legendre, we note that the policy at issue therein purported to subrogate to the insurer "any rights of recovery" belonging to the insured, and, in addition, the insurer was subrogated, by virtue of the subrogation receipt, to "all rights" which the insured might have arising out of the loss. The instruments clearly attempted to effect a total subrogation, contrary to Appellant's contention.
The judgment is affirmed at Appellant's cost.
AFFIRMED.
NOTES
[1] Although the facts in the record establish that medical expenses aggregating $107,577.80 were paid by Blue Cross to decedent's succession, to which amount Blue Cross was subrogated, the amount in dispute herein is limited to that portion of the settlement proceeds deposited in the registry of the lower court by stipulation of all parties, namely, $107,000.00.