STOKER, Judge.
ISSUE
This is a summary judgment case. In this appeal we deal with the settled rule that an insured who releases his debtor, thereby depriving the insurer of its subro-gation rights under a policy, discharges the insurer from any liability under the insurance policy. We also have as an issue whether the insurer may nevertheless owe penalties and attorney’s fees. We find that they may be recovered if the insurer is shown to be arbitrary and capricious in failing to pay the insured. Inasmuch as the insurer may be liable for penalties and attorney’s fees and there are unresolved material issues of fact in this regard, the insurer is not entitled to summary judgment. We reverse and remand on this ground and affirm the summary judgment insofar as it denies recovery against the insurer on the basic demand.
FACTS
The facts were stipulated and are not in dispute. On January 17, 1987 plaintiff was injured in an automobile accident and incurred medical expenses in the amount of $13,508.21 as a result. Plaintiff seeks to recover from Blue Cross and Blue Shield of Florida, Inc. (Blue Cross) medical expenses in the amount of $13,508.21. The plaintiff also seeks to recover penalties and attorney’s fees under LSA-R.S. 22:657.
Plaintiff had automobile insurance on the vehicle he operated with American Home Assurance Company. This policy of insurance contained uninsured/underinsured motorist coverage with limits of $10,000 per person.
The operator of the other automobile involved in the accident was William Burk. At the time of the accident, Mr. Burk had automobile liability insurance with Allstate Insurance Company with policy limits of $10,000 per person.
On March 13, 1987 plaintiff entered into a full, final and complete settlement with William Burk and his automobile insurer, Allstate Insurance Company, releasing all claims for the amount of the policy limits, *1042 $10,000. On April 1, 1987 plaintiff entered into a full, final and complete settlement with American Home Assurance Company releasing all claims for the $10,000 uninsured/underinsured motorist policy limits. Plaintiff reserved no claims or actions against anyone else. Blue Cross, which insured plaintiff for medical and hospital expenses, did not give its prior consent to the settlements and did not receive notice of the settlements until after the day that each was entered into.
PROCEEDINGS IN THE TRIAL COURT
Plaintiff instituted this suit against Blue Cross to recover the medical expenses incurred arising out of the January 17, 1987 automobile accident. Blue Cross and Blue Shield of Florida, Inc. filed a motion for summary judgment seeking. dismissal of the lawsuit on the ground that its insured breached the subrogation provision of the group health policy. This provision provides:
“SUBROGATION
“In the event of any payments for benefits provided to an insured under the policy, Blue Cross and Blue Shield of Florida to the extent of such payment, shall be subrogated to all causes of action and all rights of recovery such insured has against any person or organization. Such subrogation rights shall extend and apply to any settlement of a claim, irrespective of whether litigation has been initiated. The insured shall execute and deliver such instruments and papers as may be requested by Blue Cross and Blue Shield of Florida and do whatever else is necessary to secure such rights to. Blue Cross and Blue Shield of Florida. Further, the insured or the insured’s legal representative shall promptly notify Blue Cross and Blue Shield of Florida of any settlement negotiations prior to entering into a settlement agreement. No waiver, release of liability or other documents executed by the insured without such notice to Blue Cross and Blue Shield of Florida shall be binding upon Blue Cross and Blue Shield of Florida, and failure to so notify Blue Cross and Blue Shield of Florida shall not prejudice Blue Cross and Blue Shield of Florida’s right to recover such payment from any person or organization to the fullest extent permitted by law.”
The trial judge found in favor of the defendant and dismissed the plaintiff’s suit at his cost. Plaintiff has appealed the trial court’s ruling.
LAW
Subrogation is a legal fiction allowing the substitution of one person to the rights of another. Typical express provisions in some policies grant subrogation rights to the insurer. In the absence of a provision in a policy granting subrogation to the insurer, the insured may collect from a third party tortfeasor and retain all that he has been paid by the insurer. Such is not the case with the suit at hand.
In the instant case, the policy contained a so-called subrogation provision, that which is quoted above. We hold that the provision contained the appropriate language to establish a valid subrogation right in favor of Blue Cross, conventionally subrogating the insurer to the rights of the insured to recover damages from another. It provided that the insured shall do whatever is necessary to enable the insurer to exercise its subrogation rights and shall do nothing to prejudice those rights, including not executing a settlement or release without proper notification to the insurer. Therefore, since there exists a valid subrogation clause, the law is clear. When the insured releases his debtor and thereby deprives the insurer of its subrogation right, the insurer is discharged to the degree of this impairment from its liability under the policy. Miller v. Hartford Fire Insurance Company, 422 So.2d 1142 (La.1982); Howard Griffin, Inc. v. Progressive Cas. Ins. Co., 409 So.2d 1262 (La.App. 2d Cir.1982); Washington v. Dairyland Insurance Company, 240 So.2d 562 (La.App. 4th Cir.1970); Polk Chevrolet Company, Inc. v. Salario, 132 So.2d 115 (La.App. 1st Cir.1961) and Travelers Fire Ins. Co. v. Ackel, 29 So.2d 617 (La.App. 2d Cir.1947).
*1043 By settling with and releasing the tort-feasor or those responsible for the loss to the insured, plaintiff completely and irrevocably destroyed the insurer’s rights to recover from those persons. It is well settled that where the insured prejudices the insurer’s subrogation rights provided under the policy, the insured cannot recover from the insurer. Griffin, supra; Washington, supra.
In Washington, plaintiffs were injured in an automobile accident and as a result incurred medical expenses. The insured automobile, being driven by Washington and in which Bradford was a passenger, was struck in its rear by a truck owned by Harper and operated by his employee Jackson, both of whom were insured against liability by Aetna. The accident was caused solely by the negligence of Jackson. The defendant in the suit was the automobile insurer providing coverage, including medical payments, on the vehicle in which plaintiffs were injured. Plaintiffs made demand on defendant for their medical expenses and submitted proofs of loss. Before any payment by defendant, both plaintiffs settled all claims against the truck driver, his employer and their insurer in exchange for the execution of full releases which clearly included the medical expenses demanded from the defendant insurer.
The court held that:
“The judgment appealed from is based on the settled rules that a provision in a policy providing for subrogation of the insurer to the rights of the insured upon payment of a claim under the policy by the former to the latter is effective as a conventional subrogation and that when an insured releases a third-party tort fea-sor, thus defeating the subrogation rights of his insurer, the insured loses his right to recover under the policy.” Washington, page 564.
Likewise, in the instant case, similar facts present themselves. Before payment was received from defendant for the medical expenses incurred in the accident, plaintiff settled the case against the tortfeasor and the two applicable insurers and executed full releases including the medical expenses. This action destroyed the insurer’s potential right of subrogation. Thus, we agree with the trial court that the plaintiff cannot recover from the insurer where the named insured has prejudiced and, in fact, destroyed the insurer’s subrogation rights. The result is that the insurer is discharged from its liability under the policy-
We regard our holding as being based on settled law. The appellant appears to agree to the general principle represented by the Miller line of cases cited above, but for various reasons he considers that general principle to be inapplicable here. Appellant states his case in the syllabus to his brief which we quote:
“SYLLABUS
“1. When an insured releases his debtor and thereby deprives the insurer of its subrogation right, the insurer is discharged to the degree of impairment from liability under policy. Miller vs. Hartford Fire Insurance Company, 422 So.2d 1142 (La.1982); Howard Griffin vs. Progressive Casualty Insurance Company, 409 So.2d 1262 (La.App. 2nd Cir.1982) and Washington vs. Dairyland Insurance Company, 240 So.2d 562 (La.App. 4th Cir.1970).
“2. An insurance company becomes partially subrogated by paying a portion of a claimant’s loss, but the claimant is entitled to collect the remainder of what is due him from the tort-feasor in preference to the claim of partial subrogation by the insurer. Southern Farm Bureau Insurance Company vs. Sonnier, 406 So.2d 178 (La.1981).
“3. A tort-feasor is entitled to raise the defense of ‘inability to pay’ whenever a subrogation claim is filed against him by an insurance company who has made payment on a claim. Henton vs. Southeastern Fidelity Insurance Company, 364 So.2d 1383 (La. 3rd Cir.1978) and Bond vs. Commercial Union Assurance Co., 407 So.2d 401 (La.1981), on remand 415 So.2d 572 (La.App. 3rd Cir.1982).
*1044 “4. The settlement of a claim against the tort-feasor without reservation of rights does not relieve the claimant’s own health insurance carrier of its obligation to pay if the claimant was not fully compensated by reason of the settlement. Wallace vs. Aetna Life and Casualty Insurance Company, 499 So.2d 577 (La.App. 2nd Cir.1986) and Belt vs. Farm Bureau Insurance Company, 524 So.2d 1256 (La.App. 3rd Cir.1988).
“5. Although an insured’s settlement and release of tort-feasor may subsequently void their claim for payment of insurance proceeds from their own insurer, nevertheless, that insurer’s failure to pay claim within statutory delay subjects the insurer to liability for penalties and attorney fees, Belt vs. Farm Bureau Insurance Company, supra.
“6. An insurer’s unjust and unreasonable failure to pay claim within 30 days of receiving notice and proof of claim subjects it to an award of penalties equal to double the amount of health and accident benefits due and attorney fees. LSA-R.S. 22:657.”
As to syllabus point one, we assume that counsel sets it forth to merely state the general principle represented by the Miller line of cases. The direct quote from Miller is “... when the insured releases his debt- or and thereby deprives the insurer of its subrogation right, the insurer is discharged to the degree of this impairment from its liability under the policy.”
For point two of the syllabus, appellant cites Southern Farm Bureau Cas. Ins. v. Sonnier, supra, for the proposition that Brister had the right to collect what was due him in preference to any claim for partial subrogation that Blue Cross might have had. That may, perhaps, be one way of stating the holding in Sonnier, but the holding of the case is in no way applicable to the facts of this case. Sonnier was not an impairment of rights case. That case dealt with the preferential rights between a subrogor (the injured insured) and the sub-rogee (the medical payments carrier). There the insurer was attempting to recover from the survivors of the insured the amount the subrogated insurer had paid to the survivors where the survivors thereafter settled with the tortfeasor. What the Supreme Court held in Sonnier was that since the survivors had not been fully compensated, the subrogated insurer could not collect from the survivors the amount the insurer had paid them. In Sonnier the medical insurer was going against the insured’s survivors. In the case before us the action is the other way around. The preferential rights rule announced in Son-nier cannot be applied in a reverse fashion to avoid the defense posed in our case.
The appellant’s third point is premised on the “inability to pay rule” and cites the Henton and Bond cases referred to above. Any persuasive function these cases might have had is lost. The doctrine embodied in the “inability to pay rule” was jurispru-dentially abolished by the Louisiana Supreme Court in Rodriquez v. Traylor, 468 So.2d 1186 (La.1985); see also, Hebert v. Domingue, 473 So.2d 120 (La.App. 3d Cir.), writ denied, 477 So.2d 708 (La.1985).
Under point three of appellant’s syllabus, appellant urges that the Wallace and Belt cases stand for the proposition that “settlement of a claim against the tort-feasor without reservation of right does not relieve the claimant’s own health insurance carrier of its obligation to pay if the claimant was not fully compensated by reason of the settlement.” The plaintiff in Wallace relied on Carter v. Bordelon, 370 So.2d 113 (La.App. 1st Cir.1979). Carter did not involve the issue of destruction of the rights of a subrogated insurer caused by the unilateral settlement by the insured with the responsible parties. In Carter the issue was one of preferential rights: whether the survivors of a deceased insured or his medical insurer were entitled to funds deposited in the registry of court by various responsible parties. Under a stipulation in a settlement agreement (to which the medical insurer was a party) the survivors were paid certain funds. Other funds were placed in the registry of court. The medical insurer and the survivors also agreed in the settlement that the court should decide on the disposition of the funds deposited in escrow. The question was who had prefer *1045 ence in payment, not the destruction of an insurer’s subrogation rights.
In Wallace a plaintiff sought additional compensation from her group health insurer after she settled with various responsible parties. The Wallace case is distinguishable because the provision in question was one requiring reimbursement of the insurer by the insured in case the latter made a settlement with the responsible parties. While Wallace is not pertinent, the court in Wallace made certain dicta statements in response to the plaintiffs claim that Carter v. Bordelon, supra, was applicable. The Wallace court stated the matter as follows:
“The basic issue before this court is whether the plaintiff failed to prove the amount to which she was entitled and whether she failed to comply with the terms of the above quoted reimbursement clause in the policy, thereby relieving the defendant of the obligation to pay plaintiffs medical expenses.
“Plaintiff claims this is a subrogation clause and that because the amount received in the settlements did not fully compensate her for the total amount of her damages, the settlement with her tort-feasors does not relieve defendant of the obligation to pay her medical expenses. Plaintiff cites Carter v. Bordelon, 370 So.2d 113 (La.App. 1st Cir.1979) for this contention. Said another way, plaintiff contends that defendant cannot be subrogated to her rights when she has not been fully compensated by those who caused the injury.
“In considering this theory of plaintiffs case, it appears that she must first show that she did not recover full compensation from the tort-feasors and second, she must also show that the above quoted clause in the insurance policy is a subrogation clause.”
Inasmuch as the Wallace court affirmed the trial court holding that the policy provision in question was a reimbursement clause and not a subrogation clause, it was unnecessary for the Wallace court to speculate on the effect of inadequate compensation for medical expenses. However, it did so but concluded that the plaintiff failed to prove she was underpaid in the settlement she made with responsible parties. Therefore, the court concluded that “plaintiffs argument that she was not fully compensated for her injuries must fall.” The Wallace court then distinguished subrogation and reimbursement clauses. Holding that the insurance policy clause was a reimbursement clause, the court then concluded there could be no recovery. It said that the purpose of reimbursement clauses is to prevent an injured party from receiving multiple recovery for the same injury, and plaintiff had received in settlement an amount far in excess of her medical expenses.
In the case before us counsel argues on behalf of Kenny Brister that he should recover under the dicta expressed in Wallace because he was inadequately compensated for his medical expenses and that he had proved the necessary elements not proven by the plaintiff in Wallace. The dicta statement in Wallace is no more than a reiteration of the principle discussed in Carter. The dicta did not apply to a destruction of subrogation rights by an insured. It avails Kenny Brister nothing.
On behalf of Brister counsel also cites Belt v. Farm Bureau Ins. Co., 524 So.2d 1256 (La.App. 3d Cir.), writs denied, 526 So.2d 799 (La.1988). Counsel urges that we cited Wallace approvingly, which is perhaps so. However, unlike Wallace and Carter, Belt presented two issues: the rule against double recovery and the impairment of the insurer’s subrogation rights by a unilateral release of the tortfeasor by the insured. In Belt the plaintiffs lost on both points. Insofar as concerns the discussion of under compensation (rejected as a factual issue) as an issue in Belt, our discussion of Carter and Wallace applies. In Belt the discussion of the under compensation factor and the rule against double recovery is valid, but it deals with the preference question discussed in Carter. The compromise of the right of Belt’s insurer was a separate issue and an additional reason for rejecting the plaintiff’s claims.
*1046 A reply brief on behalf of Kenny Brister cites Smith v. Manville Forest Products Corp., 521 So.2d 772 (La.App. 2d Cir.), writ denied, 522 So.2d 570 (La.1988), as constituting support for plaintiffs position and “indicates that any distinction between sub-rogation and reimbursement is not really important.” While we agree in principle with Smith, it adds nothing in support of plaintiff’s case. Smith is a reiteration of the principle governing the issue discussed in Sonnier, Carter and the dicta in Wallace. The rationale of the Sonnier line of cases involves the concept of partial subro-gation. The insurer is regarded as only partially subrogated if the insured’s medical expenses exceed the amount the insured receives in settlement with responsible parties. The courts reason that as a partial subrogee the insurer cannot exercise its subrogation rights so long as the insured has not been fully compensated. Once the insured is fully compensated, the insured may encounter the double recovery provisions of some policies which prevent the insured from recovering more than his medical expenses. At this point the preference in recovery shifts to the insurer.
It is not necessary that we address plaintiff’s contention that Smith holds that there is no distinction between reimbursement and subrogation in the context under consideration. In fact, Smith was a subro-gation case. It reversed a summary judgment in favor of an insurer on the ground that there was a material issue of fact as to whether the medical expenses in question were greater than the amount received in a settlement.
In summary, the holding of the Sonnier line of cases has nothing to do with the issue before us in this case. In this case the insured destroyed the insurer’s subrogation rights. As held in the second point involved in Belt, 524 So.2d 1256, 1260, the impairment of the subrogation rights of defendant, Blue Cross, caused by the plaintiff’s release of the responsible parties resulted in Brister losing his rights to recover under the policy. As a consequence, Blue Cross is entitled to a partial summary judgment, at least, affirming the trial court’s holding denying plaintiff’s recovery of the medical expenses sought in this action. LSA-C.C.P. art. 966 A.
PENALTIES AND ATTORNEY’S FEES
In this appeal Kenny P. Brister contends that, even if he is not entitled to recover his medical expenses because he impaired his insurer’s subrogation rights, he is nevertheless entitled to recover penalties and attorney’s fees under LSA-R.S. 22:657. Plaintiff Brister urges that the second part of our holding in Belt supports this claim. We agree that Belt stands for the proposition that penalties and attorney’s fees can be recovered in circumstances such as are involved herein and as were involved in Belt. However, such recovery depends upon when demand is made by the insured on the insurer. In Belt the insurer failed to pay the insured within the statutory period provided which began when the insureds submitted proof of loss and demanded payment. The insureds made their settlement after the running of this period.
LSA-R.S. 22:657 requires that all claims under the terms of health and accident contracts issued in Louisiana, except for accidental death claims under such contracts, “shall be paid not more than thirty days from the date upon which written notice and proof of claim ... are furnished to the insurer_” Failure to make payment within the thirty-day period shall subject the insurer to a penalty of double the benefit due, together with attorney’s fees to be fixed by the court. In Belt we held that although settlement and release subsequently voided the Belts’ claim for payment from their insurer, the Belts were entitled to payment within the time period specified by the statute in their dating from the submission of proof of loss and due demand. Failure of the insurer to pay was willful, capricious and without probable cause and the insurer was liable for penalties and attorney’s fees.
The reason for the Belt rule is clear. An insured is entitled to have his claim paid within the statutory period. The applicable statutory period obviously states public pol *1047 icy of this State that legitimate claims be paid promptly. If an insurer pays and the insured later makes a settlement without the insurer’s permission, the insurer’s remedy is to seek reimbursement from the settling insured. To allow an insurer to defeat a claim for penalties and attorney’s fees on the ground that a settlement to its prejudice took place after the statutory period had run would militate against the public policy requiring prompt payment of proper and legitimate claims. Moreover, to allow a prejudicial settlement to cancel out a claim for penalties and attorney’s fees could open the way to possible abuse. Requiring prompt payment, that is, within the statutorily provided period, reduces the possibility that an insured may feel constrained to settle his claim at a disadvantage to himself.
Despite the public policy involved, the appellee-insurer makes an argument based on logic: “The issue of arbitrary and capricious conduct on the part of the insurer is irrelevant since plaintiff’s claim is barred.” True logic is otherwise. Assuming plaintiff’s claim against the insurer was valid to begin with, plaintiff’s rights to penalties and attorney’s fees (assuming that the insurer was arbitrary and capricious in not paying within the statutory period) were fixed when the claim was not paid within the applicable period. The fact that the plaintiff destroyed the insurer’s subrogation rights at a later date relates to the right of plaintiff to recover his claim, not to his right to penalties and attorney’s fees. The two things are not related or connected.
The Belt case involved LSA-R.S. 22:658 which requires payment by insurers within sixty days. In the case before us the applicable statute is LSA-R.S. 22:657 which provides for a thirty-day period for payment after sufficient demand. In its brief the appellee-insurer appears to agree that thirty days is the applicable period but argues that Mr. Brister signed the receipt and release within that period. While this may be true, the appellee cites no facts to prove this assertion. Unlike the facts in Belt, we find no evidence in the record of the date on which Brister made his demand. No affidavit supports the appellee’s contention. In its brief appellee asserts that it received two claims from Brister on February- 17, 1987. The plaintiff alleges that the two settlements were made on March 13 and April 1, 1987. Under the circumstances, there is a genuine issue of material fact as to whether demand had been made on Blue Cross for payment of appellant’s medical bills as provided in LSA-R.S. 22:657.
The trial court’s ruling on the motion for summary judgment merely grants the motion on the ground that there are no genuine issues of material fact. There is no indication one way or the other that it considered the penalties and attorney’s fee issue. In any event, we find that there is a genuine issue as to whether Brister made his claim within the thirty-day period, or afterwards. To that extent the trial court must be reversed and the case must be remanded for a trial of that issue.
Blue Cross contends that even if we consider plaintiff’s claim for penalties and attorney’s fees to be valid, such a claim is pre-empted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.A. § 1144. We do not consider this issue because the relevant facts are not before us. For example, we have no evidence before us as to whether the Blue Cross contract constitutes a “plan” within the meaning of ERISA. As this case will be remanded to the trial court for trial of the penalties and attorney’s fees, it is proper that the issue be considered there if appropriate.
CONCLUSION
For the reasons stated above, the judgment of the trial court is affirmed insofar as it grants judgment to Blue Cross and Blue Shield of Florida, Inc. and against plaintiff, Kenny P. Brister, denying plaintiff recovery under the defendant’s policy of insurance for the sum of $13,508.21 representing medical expenses allegedly sustained by plaintiff growing out of an automobile accident on or about January 17, 1987. In all other respects the judgment of the trial court is reversed, particularly as it *1048 relates to penalties and attorney’s fees sought under LSA-R.S. 22:657, and the ease is remanded to the trial court for further proceedings consistent with this opinion. The costs incurred thus far in the trial court and in this court of appeal are assessed equally to plaintiff and defendant.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.