407 So.2d 401 (1981)
Chester G. BOND, III, et ux.
v.
COMMERCIAL UNION ASSURANCE CO., et al. (Lumbermens Mutual Casualty Company) and
Chester G. BOND, III, et ux.
v.
Cindy G. JACK et al. (Lumbermens Mutual Casualty Co.)
No. 80-C-1965.
Supreme Court of Louisiana.
April 6, 1981.
On Rehearing November 16, 1981.
Rehearing Denied December 14, 1981.
*403 John G. McLure, McLure & McLure, Alexandria, for defendants-applicants.
Gregory S. Erwin, Bolen & Erwin, Alexandria, Sylvia Cooks, Norman P. Foret, McBride & Brewster, Lafayette, Dorwan G. Vizzier, Gist, Methvin, Hughes & Munsterman, Alexandria, for plaintiffs-respondents.
BLANCHE, Justice.
Plaintiffs, the parents of Chester G. Bond, IV, filed two lawsuits seeking wrongful death damages for the death of their major son, and a survival action for his pain and suffering, medical expenses and property damage.
In the first suit, filed in Lafayette Parish, plaintiffs sued the driver of the vehicle, Cindy G. Jack, and her insurer, State Farm Mutual Automobile Insurance Company (referred to as State Farm). In the second suit, filed in Rapides Parish, plaintiffs sued the deceased's uninsured motorist carrier, Commercial Union Assurance Companies (referred to as Commercial), and their own uninsured motorist carrier, Lumbermens Mutual Casualty Company (referred to as Lumbermens). Commercial and Lumbermens filed several pre-trial exceptions which were denied and a third party demand against Cindy Jack.
The suit in Lafayette Parish was transferred to Rapides Parish by order of the trial court and was consolidated with the suit against the two uninsured motorist carriers. Prior to the trial, Chester G. Bond, III, the deceased's father, passed away. His wife and daughter were properly substituted in his place.
After a three day trial, the twelve person jury returned a unanimous verdict for the defendant, Cindy Jack; thus, all claims were dismissed. The plaintiffs appealed and the Third Circuit Court of Appeal reversed and rendered a judgment in favor of the plaintiff against all four defendants. Defendant Lumbermens has taken this writ, which we granted under the jurisdiction of the 1974 Louisiana Constitution, art. 5, § 5.
The facts of the case are relatively simple. On a clear, dry summer day at a little past noon the deceased, Chester G. Bond, IV, was riding his 750CC motorcycle in a southward direction on University Avenue, a four-lane avenue in the City of Lafayette. The defendant, Cindy Jack, a student at USL at the time, was driving her 1965 automobile in a northward direction on University *404 Avenue. She executed a left turn off of University Avenue onto Azalea Street, a two-lane road, in front of the deceased. In his attempt to avoid a collision with the defendant, the deceased put on his brakes and swerved his motorcycle. He lost control of the motorcycle, flew through the air and landed on the pavement. Having no helmet, the deceased sustained severe head injuries which resulted in his death thirty-two hours later.
The jury heard several witnesses for each side recant the events of that day, and concluded unanimously that the defendant was not negligent or that the deceased had been contributorily negligent. None of the defendants were held responsible to the plaintiffs, and the third party demand of Lumbermens and Commercial against Cindy Jack was also dismissed.
The court of appeal reversed the trial court's finding of no negligence on the part of the defendant Cindy Jack. The court was also of the opinion that a proper jury charge had not been given to the jury as the standard for a left-turning motorist was greater than "ordinary care". Furthermore, it concluded that even had the jury been properly charged it would have been manifest error to reach a verdict for the defendants. Accordingly, the court awarded the plaintiffs: $10,000 for decedent's pain and suffering; $20,000 per parent for his wrongful death; and $8007.58 for stipulated medical and funeral expenses, for a total award of $58,007.58.
In Suit # 7489, the defendant, Cindy Jack, was held responsible for the entire amount of the judgment. Defendant State Farm was held liable for the limit of her policy, $5,000, in solido with Cindy Jack. The judgment was consolidated with the judgment in Suit # 7488 concerning Lumbermens and Commercial. Their liability was for the excess of State Farm's liability. Since the limit on the Commercial policy was $5,000, and that on the Lumbermens policy was $100,000, their respective liabilities were adjusted in proportion to their coverages. Thus, Commercial was held responsible for $2,524.17, and Lumbermens for $50,483.41 which, combined with State Farm's $5,000, made a total consolidated judgment of $58,007.58.
The court of appeal further ruled that the third party demand of Commercial and Lumbermens against Cindy Jack was still alive though they had not answered the plaintiff's appeal, for they had prevailed at the trial court. However, the Third Circuit ruled Commercial and Lumbermens could not seek reimbursement from Cindy Jack, citing Niemann v. Travelers Ins. Co., 368 So.2d 1003 (La.1979). Thus, they affirmed the dismissal of the third party demands against Cindy Jack.
On certiorari to this Court, Lumbermens has raised four specifications of error:
(1) The court of appeal erred in holding the jury committed manifest error and was clearly wrong in finding for the defendant.
(2) The court of appeal erred in reciting the standard of care for left-turning motorists and finding the jury was precluded from reaching a proper verdict.
(3) The court of appeal erred in finding uninsured motorist coverage on the part of Lumbermens; and
(4) The court of appeal erred in holding that uninsured motorist carriers have no cause of action against an alleged third party tortfeasor.
Though tempted to address each of these allegations, particularly number 4, we decline, for we agree with the defendant that specification of error number 3 has merit and, accordingly, we reverse the court of appeal's finding that the deceased was covered by the Lumbermens policy issued to the deceased's father. We agree with the defendant Lumbermens that the deceased was not an insured under his father's uninsured motorist policy as the deceased was not a resident of his father's household.
Prior to the trial, Commercial filed exceptions of improper venue and lack of procedural capacity and Lumbermens filed an exception of venue. It was obvious to the trial judge that Lumbermens' prime contention *405 was that plaintiffs had no cause of action as the deceased was allegedly not a resident of his father's household. The trial judge heard the evidence and overruled both defendants' exceptions, including the exception of no cause of action. The defendants did not appeal.
At the trial, the trial judge refused to allow the defendants to pursue this issue of the deceased's residency in front of the jury. By the use of proffer, both the defendant and the plaintiffs put in evidence substantial materials concerning the deceased's residency.
However, once the jury found for the defendants, Lumbermens was not held liable to the plaintiffs irrespective of the deceased's residence. When the plaintiffs appealed the decision to the court of appeal, none of the defendants answered or appealed the lower court's decisions.
The court of appeal reversed the trial court's holding and while addressing Commercial's and Lumbermens' third party demand against the tortfeasor, Cindy Jack, they did not regard the deceased's residency. It appears they assumed the deceased was covered by his father's uninsured motorist policy.
We now address that issue in spite of the plaintiff's contention that the issue should be considered abandoned because the defendant Lumbermens did not appeal the overruled exception of no cause of action, nor raise the issue by answering the plaintiff's appeal.
According to C.C.P. art. 2083:
"An appeal may be taken from a final judgment rendered in causes in which appeals are given by law whether rendered after hearing or by default, and from an interlocutory judgment which may cause irreparable injury."
The overruling of Lumbermens' exception of no cause of action was not a final judgment and did not cause irreparable injury. Rapides Cent. Ry. Co. v. Missouri Pac. R. Co., 207 La. 870, 22 So.2d 200 (1945). A trial court's overruling of the defendant's exception of no right or cause of action is an interlocutory judgment and is not appealable, but it is reviewable on appeal from an adverse judgment on the merits. Maxie v. Hartford Acc. & Indem. Co., 212 So.2d 165 (La.App. 3rd Cir. 1968).
Thus, the defendants could not have appealed the overruling of their exception of no cause of action, but they could have raised it on appeal if they had received an adverse judgment on the merits.
However, the defendant was not under any necessity to appeal the overruled exception after having received a favorable judgment on the merits at the trial court. According to C.C.P. art. 2133:
"An appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant ..."
Thus, it would appear from the clear provisions of this article that the defendant was not obliged to answer an appeal from a judgment he did not desire to have modified, revised or reversed in part.
In interpreting the predecessor articles, Code of Practice, arts. 888 and 592, to art. 2133, we have previously decided this issue. In Succession of Markham, 180 La. 211, 156 So. 225 (La.1934), we asked the question, "Have we the power to consider the exception, at the defendant's instance, in the absence of an appeal by her or in the absence of an answer to the appeal taken by the plaintiff?" We answered in the affirmative.
Likewise, our courts of appeal have held that the prevailing party at the trial level may raise his exceptions on appeal even if he has not sought the appeal nor answered the loser's appeal. The failure of the defendant to appeal or answer the plaintiff's appeal did not procedurally bar the court of appeal from considering the defendant's overruled exception urging no cause and no right of action. State v. Placid Oil Co., 274 So.2d 402 (La.App. 1st Cir. 1972).
Employing the logic of Succession of Markham, supra, the Second Circuit succinctly resolved this issue, holding:

*406 "Defendants seek no change in the judgment because the effect of sustaining on appeal their pleas of prescription would leave the demands of the plaintiff rejected just as they are now rejected in the judgment appealed from. The exceptions of prescription filed by appellees may be considered by this Court even though the defendants neither appealed nor answered the appeal." Clark v. McDonald's System, 383 So.2d 61, 62 (La.App. 2nd Cir. 1980).
We believe it would have been the better practice for Lumbermens to have answered the appeal, asserting its contentions that the deceased was not a resident of his father's household and not covered by the policy. Had this procedural vehicle been utilized the court of appeal would have been squarely confronted with the issue and this Court would have had the benefit of that court's considered judgment of the same. For this omission, we will assign costs of this writ to Lumbermens even though they will be the successful litigant herein. C.C.P. art. 2164.
However, we disagree with plaintiff's contention that the defendant has abandoned this issue, and we agree with the Third Circuit that C.C.P. arts. 2083 and 2133 were not designed to require a successful party to insure his judgment below by appealing every adverse ruling on an interlocutory order simply because the appellate court may overturn the trial court's final decision in his favor on the merits.
We now address the issue and conclude the deceased was not covered by his father's Lumbermens policy.
According to the Lumbermens policy, "persons insured" included any "relative". A "relative" is clearly defined as "a relative of the named insured who is a resident of the same household." We agree the deceased was the son of the named insured; however, we do not believe he was a resident of the same household.
Residency is a question of law and fact to be determined from all the facts of each particular case. Taylor v. State Farm, 248 La. 246, 178 So.2d 238 (1965). The facts in this case are: After graduating from high school in Alexandria, the city in which his parents reside, Chester G. Bond, IV attended college for a short while and then joined the U.S. Navy for four years. He was married and divorced. He became employed in Southern Louisiana as an offshore anchor handler and, again, he was married for a short period and divorced. At the time of his death, he was employed as an anchor handler operating out of New Iberia. His job required him to be on call 24 hours per day and to live within 1 hour of the Port of New Iberia so he could promptly react to calls. He had an apartment in Lafayette where he resided. When he unfortunately died, Chester G. Bond, IV was 30 years old, twice divorced, living and working in Southern Louisiana. He was not a resident of his father's household in Alexandria.
Admittedly, he was close to his parents and did visit them in Alexandria, stay in his old room, keep some personal belongings there, and receive some mail and dividend checks there. We do not regard this as a convincing argument for it is a common experience that a large number of sons and daughters after leaving home remain close to their parents and maintain this type of contact with them, yet are not regarded as residents of their parents' household.
Each case must be taken on its own facts, and one crucial fact convinces us that the deceased was not a resident of his father's household. Prior to the accident, the father, Chester G. Bond, III, was sent an increase in his Lumbermens premium because of an accident or ticket his son, the deceased, had received. The father immediately notified his local agent that his son was not a resident of his household, that the son was not to be included under the policy, and that the increase in the premium was an error. The agent corrected the error and the father's request was noted on the policy endorsement. Defendant's Exhibit # 10.
Thus, we regard the facts of this case to reveal the deceased was not a resident of his father's householdneither in the eyes *407 of the law, nor in the eyes of his own father, the policyholder.
For these reasons, the decision of the Third Circuit Court of Appeal holding the defendant Lumbermens responsible to the plaintiffs for any amount is reversed. We affirm the decision as to the other defendants; thus, Cindy Jack is responsible for the entire amount of the judgment, State Farm is responsible for $5,000, and we amend the decision against Commercial to $5,000, as that is their policy limit. As discussed in this opinion, costs of this appeal are assessed to Lumbermens.
Reversed in part; affirmed and amended in part.

ON REHEARING
DENNIS, Justice.
In our first review we erroneously found that the deceased was not a resident of his father's household in Alexandria. In this opinion we reverse that finding and consider the other issues pretermitted by our initial review, viz., whether the jury verdict was clearly wrong and whether the insurer is entitled to subrogation.

1. Deceased's Residence

Primarily, we fell into error on original hearing because we gave decisive weight to the August 1, 1973 policy endorsement which stated that the deceased was married, had his own car and was no longer living in Alexandria. Upon reconsideration it is clear that the endorsement does not amount to conclusive disproof of young Bond's residence in his father's household at the time of his death. Shortly after the effective date of the endorsement, he was divorced from his wife, and the evidence tends to show that he reestablished his residence in his father's house. His father testified that he did not remember ever telling his insurance agent that his son no longer lived in Alexandria. Rather, he claimed that he only informed the agent that his son should no longer be considered a primary driver of the vehicle because he had his own car and insurance.
The plaintiffs produced considerable evidence explaining the deceased son's reason for maintaining an apartment in Lafayette in addition to his Alexandria residence. At the time of his death, the deceased was a thirty year old single man. He was employed as an anchor-handler, performing ninety-five percent of his work offshore. His work took him to locations throughout the western hemisphere for varying lengths of time. The deceased was on call twenty-four hours a day, unless specifically given time off. If called by his employer he was required to report to the employer's New Iberia office within one hour. In order to fulfill this condition of employment the deceased rented an apartment in Lafayette. The deceased's father testified, however, that his son kept only his work clothes and the bare essentials for apartment living in Lafayette.
Mr. Bond testified that his son lived at his home in Alexandria most of the time when he was not required to be on call for work. He had his own key to the house and came and went as he pleased. The deceased had his own room at the house in Alexandria and kept various items of personal property there, including a desk, most of his clothes, a gun collection, two dogs, stereo and camping equipment and other personal belongings. Young Bond was allowed free use of the family automobile to which he had duplicate keys. The deceased received various items of mail at the Alexandria address, including dividend checks from two different corporations, federal and state tax forms, car insurance payment notices, and mail from friends. Further, Mr. Bond testified that the deceased had a substantial relationship with the Alexandria social, commercial and professional communities involving bank accounts, retail charge accounts, dental and other medical consultations, and church membership.
The insurance policy's definition of an insured includes any blood relative of the named insured "who is a resident of the same household." Since this term has no absolute or precise meaning, see Cal-Farm Ins. Co. v. Boisseranc, 151 Cal.App.2d 775, *408 312 P.2d 401 (1957), any doubt as to the extent or fact of coverage under it will be understood in its most inclusive sense, in accordance with the settled principle that ambiguity in an instrument is resolved against the draftsman. La.C.C. arts. 1957, 1958 (1870). See, e. g., Insurance Co. of North America v. Solari Parking, Inc., 370 So.2d 503 (La.1979); Credeur v. Luke, 368 So.2d 1030 (La.1979); Heiman v. Pan American Life Ins. Co., 183 La. 1045, 165 So. 195 (1936); Parker v. Provident Life & Acc. Ins. Co., 178 La. 977, 152 So. 583 (1934); Note, Insurance-Resident of the Same Household, 26 La.L.Rev. 724 (1966). Whether a person is or is not a resident of a particular place is a question of law as well as fact, and is to be determined from all of the facts of each particular case. Taylor v. State Farm Mutual Auto Ins. Co., 248 La. 246, 178 So.2d 238 (1965); Fielding v. Casualty Reciprocal Exchange, 331 So.2d 186 (La.App.3d Cir. 1976). Mere isolated facts cannot be relied on wholly to determine the issue. Ladner v. Andrews, 216 So.2d 365 (La.App.3d Cir. 1968); Vinet v. Hano, 281 So.2d 183 (La. App. 4th Cir. 1973). On appellate review, the trier of fact's determination of the question is entitled to great weight and the reviewing court should not substitute its opinion when the trial court's judgment is based on a reasonable interpretation of the evidence. Branam v. Traders & Gen. Ins. Co., 344 So.2d 1073 (La.App. 3d Cir. 1977).
Applying these precepts, we conclude there was ample evidence to support a finding that the deceased was a resident of his father's household in the most inclusive reasonable sense of this term. Consequently, the trial court's finding that coverage was afforded by the Lumbermens' policy should be affirmed. Accordingly, our original decision of this question is reversed and set aside.

2. Reversal of the Jury's Verdict

The court of appeal reversed the jury's verdict for the defendants because the trial court incorrectly instructed the jury on the standard of care required of a left turning motorist and because the verdict was clearly wrong based on all of the evidence in the record. Bond v. Jack, 387 So.2d 613 (La.App.3d Cir. 1980). After reviewing the evidence we conclude that the intermediate court correctly decided these issues and affirm its judgment for the reasons stated in the court of appeal opinion.

3. Insurer's Subrogation

The major question of law in this case is whether an insurer that makes payment to its insured under uninsured motorist coverage may enforce a conventional subrogation agreement contained in its policy. We conclude that upon payment an insurer, pursuant to a subrogation agreement contained in its policy, becomes conventionally subrogated to its insured's right against the uninsured tortfeasor.[1] Our general law governing subrogation, Civil Code articles 2159-62, has not been repealed or replaced by the uninsured motorist statute and applies to an uninsured motorist carrier's subrogation to the right of its insured.
Subrogation is a legal fiction admitted or established by law by virtue of which an obligation, extinguished with regard to the original creditor by payment which he has received from a third person, or from the debtor himself but with funds that a third person has furnished to that effect, is regarded as subsisting in favor of this third person who is entitled to assert, in the measure of what he has paid, the rights and actions of the former creditor. 4 C. Aubry & C. Rau, Droit Civil Francais § 321 (6th ed. Bartin) in A. Yiannopoulos, 1 Civil Law Translations 187 (1965). See also International Paper Co. v. Arkansas & Louisiana M. R. Co., 35 So.2d 769, 771 (La.App.2d Cir. 1948); 2 M. Planiol, Civil Law Treatise pt. 1, nos. 474, 475 at 271 (11th ed. La.St.L. Inst. trans. 1959); Comment, The Role of Subrogation by Operation of Law and Related *409 Problems in the Insurance Field, 22 La.L.Rev. 225 (1961); Comment, Fundamental Principles and Effects of Subrogation in French and Louisiana Law, 25 Tul.L. Rev. 358 (1951).
Conventional subrogation occurs when the creditor, receiving his payment from a third person, subrogates him in his rights, actions, privileges, and mortgages against the debtor; this subrogation must be "expressed and made at the same time as the payment." La.C.C. art. 2160. However, when Article 2160 says of the conventional subrogation that "it must be made at the same time as the payment," it does not mean that the agreement of subrogation cannot be entered into before, or in anticipation of, the payment, but simply that it cannot be entered into after the payment. Cox v. W. M. Heroman & Co., Inc., 298 So.2d 848 (La.1974); Cooper v. Jennings Refining Co., 118 La. 181, 42 So. 766 (1907); Southern Farm Bureau Casualty Insurance Co. v. Sonnier, 396 So.2d 996 (La.App.3d Cir. 1981); State Farm, Fire & Casualty Co., et al. v. Sentry Indemnity Co., et al., 346 So.2d 1331 (La.App.3d Cir. 1977).
In the present case, the Lumbermen's policy contains an agreement of subrogation entered into before, or in anticipation of, payment. The combined uninsured motorist coverage exceeds the amount of damages suffered by the plaintiffs. Consequently, upon making payment pursuant to its uninsured motorist coverage, Lumbermen's will be subrogated in the measure of what it has paid to the plaintiffs' right against the tortfeasor.[2]
The court of appeal fell into error in construing our opinion in Niemann v. Travelers, 368 So.2d 1003 (La.1979), as holding that the uninsured motorist statute impliedly repealed the subrogation articles of the Civil Code insofar as they apply to uninsured motorist carriers. The Civil Code precepts governing subrogation generally, La.C.C. arts. 2159-62, are consistent with the provisions and purposes of the uninsured motorist statute.
Automobile liability insurance issued in Louisiana must include uninsured motorist coverage unless it has been rejected by the insured. La.R.S. 22:1604(D)(1)(a). The principal elements of uninsured motorist coverage are prescribed by law. La.R.S. 22:1406(D). Any clause in an insurance contract in derogation of the mandatory requirements set forth in the statute is invalid insofar as it conflicts with law. Breaux v. Government Emp. Ins. Co., 369 So.2d 1335 (La.1979); Seaton v. Kelly, 339 So.2d 731 (La.1976); Deane v. McGee, 261 La. 686, 260 So.2d 669 (1972).
The legislative aim evinced by the original uninsured motorist statute was to afford protection to insureds when they became the innocent victims of the negligence *410 of uninsured motorists. Booth v. Fireman's Fund Ins. Co.,, 253 La. 521, 218 So.2d 580, 28 A.L.R.3d 573 (1968). In 1974 the statute was amended to provide that uninsured motorist coverage shall also apply as additional protection when the liability coverage on the tortfeasor's vehicle is less than the amount of damages suffered by an insured. La.R.S. 22:1406(D)(2)(b) (Acts 1974, No. 154). Accordingly, the object of the uninsured motorist statute, as amended, is to promote full recovery for damages by innocent automobile accident victims by making uninsured motorist coverage available for their benefit as primary protection when the tortfeasor is without insurance and as additional or excess coverage when he is inadequately insured. See Niemann v. Travelers Ins. Co., supra; Whitten v. Empire Fire & Marine Ins. Co., 353 So.2d 1071 (La.App.2d Cir. 1977).
The uninsured motorist statute gives the insurer no greater subrogation rights than those provided by the Civil Code. The uninsured motorist statute provides that an insurer who makes payment under its uninsured motorist coverage is entitled to reimbursement to the extent of its payment from the proceeds of any settlement or judgment resulting from the exercise of its insured's rights against any person legally responsible for his bodily injury for which such payment is made. La. R.S. 22:1406(D)(4). Beyond recognition of the insurer's right to reimbursement, however, the statute does not attempt to delineate the complexities of the insurer-insured-tortfeasor relationship. Significantly, the statute does not specify whether the insurer who makes payment is subrogated to the insured's action against the tortfeasor or whether the insurer's right to reimbursement is subordinate to the insured's claim for the balance of the damages he has suffered. Evidently, the legislative scheme contemplates that these matters shall be regulated by the Civil Code or other statutes not inconsistent with the purpose of uninsured motorist coverage.[3]
*411 The codal precepts governing subrogation appear to be in complete accord with the purpose of the uninsured motorist statute. Under the Civil Code the uninsured motorist carrier who pays all of its insured's damages is completely subrogated to his claim against the uninsured or underinsured tortfeasor, but when he pays for only part of the damages sustained, the insurer receives a partial, subordinate subrogation. La.C.C. art. 2162; Southern Farm Bureau Casualty Ins. Co. v. Sonnier, supra; see n. 1, supra. By allowing the insurer who either totally or partially pays the victim for the damages he has suffered a right of subrogation to his action against the uninsured or underinsured tortfeasor, the codal scheme promotes full compensation of accident victims by making the tortfeasors ultimately responsible for their delicts and thereby encouraging motorists to maintain adequate liability coverage. By giving the insured who has been only partially compensated for his loss a lawful cause of preference over the insurer for payment out of his debtor's property, the code further implements the object of the uninsured motorist statute, which is to promote full recovery for damages by innocent automobile accident victims by making both primary protection and excess coverage available.
This court decided in Niemann that an insurer may not enforce a clause excluding uninsured motorist coverage in the event of its insured's failure to obtain its consent before entering a reasonable settlement with an underinsured tortfeasor and his insurer. This holding is fully justified on the ground that such a coverage exclusion conflicts with the uninsured motorist statute's aim of promoting full recovery for all damages suffered by innocent, insured motorists. See also, Lebs v. State Farm Mutual Auto Ins. Co., 568 S.W.2d 592 (Mo.App.1978); Craig v. Iowa Kemper Mutual Ins. Co., 565 S.W.2d 716 (Mo.App.1978); Govt. Employees Ins. Co. v. Shara, 137 N.J. Super. 142, 348 A.2d 212 (1975); Annot. 25 A.L.R.3d 1275 (1969) (Supp.1981). In rejecting the insurer's pretensions to actual or potential rights against the tortfeasor paramount to its insured's interest in full recovery, this court made clear that the uninsured motorist statute does not create special or higher subrogation rights for insurers. Any discussion in Niemann of an insurer's right to subrogation under the Civil Code in other factual contexts would have been premature and unnecessary, since the issue in that case was presented by summary judgment prior to any payment by the insurer. Accordingly, our failure to engage in speculation in Niemann as to an insurer's right to subrogation under the Civil Code upon payment under its uninsured motorist coverage should not be interpreted to mean that the remedy does not exist.
In Bond v. Commercial Union Assurance Co., et al., the defendant-third party defendant Cindy Jack presented evidence during the trial of the case to show her inability to pay damages. The ability of a defendant to respond in damages is a proper subject of consideration in assessing damages. Suhor v. Gusse, 388 So.2d 755 (La.1981). The jury found in Jack's favor on the negligence issue and consequently did not assess plaintiffs' damages. The court of appeal did not consider Cindy Jack's alleged inability to pay because of its determination that the uninsured motorist carrier was not entitled to subrogation to plaintiffs' rights against her. Because the court of appeal's holding was in error it is now necessary to consider whether a tortfeasor may assert his inability to pay in mitigation of the uninsured motorist carrier's recovery in subrogation.[4]
With regard to this issue, in Henton v. Southeastern Fidelity Ins. Co., 364 So.2d *412 1383 (La.App.3d Cir. 1978) the court of appeal correctly held:
"[The insurer] is subrogated to only such rights as held by plaintiff. Since the jurisprudential rule allowing mitigation of damages applies to plaintiff, it likewise applies to [the insurer's] claim in subrogation."
Of course, the inability to pay doctrine cannot be asserted by the insurer against its own insured because the very purpose of uninsured motorist coverage is to protect insureds who become the innocent victims of tortfeasors who are without insurance or other means to fully compensate them for their damages. Cf. Tarver v. U-Haul Co., Inc., et al., 362 So.2d 1157 (La. App.2d Cir. 1978).
For the foregoing reasons, we conclude that the court of appeal's judgments in favor of the plaintiffs are correct and should be affirmed. The judgment rejecting Lumbermen's subrogation claim in Bond v. Commercial Union Assurance Company, 387 So.2d 617, must be amended, however, because upon payment to the plaintiffs the insurer is entitled to be subrogated to their rights against the tortfeasor. In reforming this judgment evidence of Cindy Jack's inability to pay must be taken into consideration.
Accordingly, the judgment in Bond v. Jack, et al. is affirmed; the judgment in Bond v. Commercial Union Assurance Company, et al. is affirmed in part, reversed in part, and the case is remanded to the court of appeal for it to make factual findings from the record and to amend its judgment consistently with this opinion.
BOND V. JACK ET AL. JUDGMENT AFFIRMED.
BOND V. COMMERCIAL UNION ASSURANCE COMPANY, ET AL. JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED.
DIXON, C. J., concurs with reasons.
MARCUS, J., dissents and assigns reasons.
BLANCHE, J., dissents in part and concurs in part and assigns reasons.
DIXON, Chief Justice (concurring).
I respectfully concur.
That portion of the majority opinion which once more departs from the clear provisions of the Civil Code (Art. 2160) seems to me to be unnecessary. See the dissent in Cox v. Heroman, 298 So.2d 848, 857 (La.1974). In this respect, Louisiana looks much more like a common law jurisdiction than a "civilian jurisdiction, having well developed statutory rules of subrogation,..." (fn. 3 in the majority opinion). Nevertheless, the court seems to be wedded to the notion that an agreement of subrogation need not be contemporaneous with payment, when made before the loss occurs. The results reached in this case are not unjust. The conceptual problem can await a contest between two subrogees, one with and one without an agreement contemporaneous with payment.
MARCUS, Justice (dissenting).
I dissent on the question of coverage adhering to our opinion on original hearing. Hence, I do not reach the subrogation issue. Nonetheless, I concur in the treatment of that issue by the majority. Accordingly, I respectfully dissent.
BLANCHE, Justice (dissenting in part; concurring in part).
For reasons previously assigned, I respectfully dissent on the coverage issue, emphasizing that on two occasions, once on August 1, 1973 and again on January 14, 1973, the father notified the agent that his son was not a resident of his household. On both occasions, the father received a reduction of premium. The facts since those occasions, namely the conditions of his employment, convinces this writer that he lived in Lafayette, Louisiana in his own *413 apartment and was not a resident of his father's household.
This writer respectfully concurs as to the opinion's treatment of the subrogation issue, but would overrule Niemann v. Travelers, 368 So.2d 1003 (La.1979) outright.
BLANCHE, Justice (dissenting from the denial of rehearing).
This writer would grant a rehearing on the issue of coverage, being of the opinion that the plaintiff was not a resident of his father's household.
NOTES
[1] Subrogation cannot injure the insured, however, if he has been paid but in part for his damages, he may exercise his right for what remains due in preference to his insurer. La. C.C. art. 2162; Southern Farm Bureau Casualty Ins. Co. v. Sonnier, 406 So.2d 178 (La.1981).
[2] In cases in which the insurer's payment is insufficient to compensate the insured for all of the damages he has suffered, the insurer is entitled to a partial, subordinate subrogation. As we observed in Southern Farm Bureau Casualty Ins. Co. v. Sonnier, 406 So.2d 178 (La.1981),

"[S]ubrogation cannot injure the creditor, since, if he has been paid but in part, he may exercise his right for what remains due, in preference to him from whom he has received only a partial payment. La.C.C. art. 2162. Thus, when the creditor has received from the subrogee a partial payment only, the credit is divided between them; the original creditor remains creditor for the unpaid portion and the subrogee becomes creditor to the extent of the payment he has made. 2 M. Planiol, Civil Law Treatise, pt. 1, nos. 515, 516 at 286 (11th ed. La.State L.Inst. trans. 1959).... According to French jurisprudence dating back as far as 1712, the original creditor or subrogor is always preferred to the subrogee in such a case; he comes before the latter, and the subrogee can only claim that which remains after the subrogor has been paid. This was the rule in the time of Pothier and the Civil Code (C.N. 1804, art. 1252) expressly recognizes this right of preference accorded to the subrogor against the subrogee. 2 M. Planiol, supra.
"Accordingly, when an insurer pays his insured only part of the damages to which the insured is entitled from a tortfeasor, the insurer becomes only partially and subordinately subrogated to the insured's right, and the insured is entitled to exercise his right for the balance of the partially paid claim in preference to the insurer-subrogee. See Carter v. Bordelon, 370 So.2d 113 (La.App. 1st Cir. 1979); Legendre v. Rodrigue, 358 So.2d 665 (La.App. 1st Cir. 1978). * * *"
[3] La.R.S. 22:1406(D)(4) provides:

"D. The following provisions shall govern the issuance of uninsured motorist coverage in this state.
"(4) In the event of payment to any person under the coverage required by this Section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer."
Probably as a direct consequence of the common law prohibition of transfers of unliquidated tort claims, the insurance industry has sought to have a subrogation right specifically enacted in any legislation requiring the inclusion of uninsured motorist coverage. A. Widiss, A Guide to Uninsured Motorist Coverage, § 3.10 (1969). As a result, provisions identical or similar to La.R.S. 22:1406(D)(4), have been enacted in many states. Id. The provision is modeled on a clause contained in the standard uninsured motorist endorsement. Id.; Note, 25 Loyola L.Rev. 798 (1979). The courts have been divided on the resolution of the question of the effect and enforceability of such subrogation devices. Several have held that such clauses are not enforceable as long as the claimant has not been fully indemnified. Perez v. Ford Motor Co., 408 F.Supp. 318 (E.D.La. 1975); Central National Insurance Group v. Hotte, 312 So.2d 235 (Fla.App.1975); Milbank Mutual Ins. Co. v. Kluver, 302 Minn. 310, 225 N.W.2d 230 (1974); Shamey v. State Farm Mutual Auto Ins. Co., 229 Pa.Super. 215, 331 A.2d 498 (1974). Others have held that the insurance company is entitled to reimbursements in all instances without regard to whether the claimant has been fully indemnified. Glidden v. Farmers Automobile Insurance Association, 57 Ill.2d 330, 312 N.E.2d 247 (1974); Cf. State ex rel. Manchester Ins. and Indemnity Co. v. Moss, Mo., 522 S.W.2d 772 (1975); Farmers Ins. Exch. v. Jones, 30 Utah 2d 211, 515 P.2d 1275 (1973); Cox v. Turner, 157 W.Va. 802, 207 S.E.2d 152 (1974). However, it is unlikely that the Louisiana Legislature intended in enacting the clause as part of the uninsured motorist statute to adopt any of the views expressed by these common law jurisdictions. Because Louisiana is a civilian jurisdiction, having well developed statutory rules of subrogation, the legislature most probably regarded its enactment of the provision as recognition of and reference to an insurer's right to subrogation as provided by the Civil Code. Moreover, interpretation of the provision in a fashion that would cause injuries of innocent, insured motorists to go unremedied would frustrate the legislative aim evinced by the 1974 amendment to the uninsured motorist statuteto promote full recovery by such motorists by making both uninsured and underinsured motorist coverage available.
[4] Because Cindy Jack did not apply for certiorari in Bond v. Jack, et al., the judgment in that case cannot be amended to benefit her. Cf. Jordan v. Travelers, 257 La. 995, 245 So.2d 151 (1971).