427 So.2d 1220 (1983)
Jack AINSWORTH in his Capacity as the Administrator of the Estate of his minor child, Denise Ainsworth, Plaintiff-Appellee,
v.
GOVERNMENT EMPLOYEES INSURANCE COMPANY, et al., Defendants-Appellants.
No. 82-232.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1983.
Rehearing Denied March 22, 1983.
*1221 George R. Privat, Lafayette, for defendants-appellants.
Joseph A. Koury, Lafayette, for plaintiffs-appellees.
Onebane & Associates, Keith Borne, Voorhies & Labbe, William Bass, Mouton, Roy, Carmouche, Bivins, Judice & Henke, Harmon F. Roy, Lafayette, for defendants-appellees.
Before GUIDRY, CUTRER and LABORDE, JJ.
GUIDRY, Judge.
This is an action for damages, arising out of an automobile accident, brought by Jack Ainsworth in his capacity as administrator of the estate of his minor child, Denise Ainsworth. Denise was injured in a two vehicle collision. She was a guest passenger in a car being driven by Simone E. Mouton when it collided with a car owned by T & N Lone Star Warehouse Company d/b/a Southwest Scrap and Salvage, Inc. (hereafter T & N Lone Star), and being driven by its employee, Charles F. Gautreaux.
Made defendants were Robert Mouton, father of the minor Simone E. Mouton, and his insurer, Government Employees Insurance Company (GEICO); T & N Lone Star and its insurers, Employers Casualty Company and Houston General Insurance Company; Maryland Casualty Company, the liability insurer of the City of Lafayette; and, Aetna Casualty and Surety Company, the uninsured motorist insurer of the plaintiff. Robert Mouton and GEICO filed a third party demand against the City of Lafayette and its insurer, Maryland Casualty. Aetna filed a third party demand against Mouton, GEICO and T & N Lone Star.
Prior to trial, the plaintiff settled with and released all defendants except Mouton, GEICO and Aetna. Upon trial of the matter, the trial judge found that the sole cause of the accident was the negligence of Simone E. Mouton. He awarded the plaintiff $23,510.09 in special damages and $250,000.00 in general damages, rendering judgment against Mouton, against GEICO to its policy limit of $10,000.00, and against Aetna to its policy limit of $100,000.00. He dismissed the third party demand of Mouton and GEICO against the City of Lafayette and Maryland Casualty. He also dismissed Aetna's third party demand against Mouton, GEICO, and T & N Lone Star. Mouton, GEICO and Aetna appeal.
The issues on this appeal are (1) whether the amount awarded to the plaintiff should be reduced as a result of the release of other defendants prior to trial; (2) whether the trial court erred in awarding interest against Aetna, the plaintiff's uninsured motorist insurer, from date of judicial demand; (3) whether the trial court erred in dismissing Aetna's third party demand for indemnification; and, (4) whether the award to plaintiff was excessive.

FACTS
The accident in question occurred on October 17, 1978, at the intersection of Evangeline Drive and Simcoe Street in Lafayette. Denise Ainsworth was a passenger in the 1969 Volkswagen being driven by Simone Mouton. As they travelled north on Evangeline Drive, Miss Mouton failed to heed a stop sign, entering the intersection in the path of the vehicle being driven by Gautreaux, which struck the passenger side of the Mouton vehicle.[1]

*1222 EFFECT OF RELEASE OF DEFENDANTS PRIOR TO TRIAL
The plaintiff released all defendants except Mouton, GEICO, and Aetna five days before the commencement of trial. The plaintiff did not amend his petition, which alleged that all defendants were joint tortfeasors. Aetna asserts that when a plaintiff releases defendants so close to trial, he is bound by his pleadings, which amount to a judicial confession of the negligence of the released defendants. Aetna argues that in such a situation, the remaining defendants are entitled to a reduction in the amount awarded.
It is well settled that when a joint tortfeasor is released by the plaintiff, the total awarded to the plaintiff must be reduced proportionately. Harvey v. Travelers Insurance Company, 163 So.2d 915 (La.App. 3rd Cir.1964). However, if an alleged tortfeasor is released prior to trial, the negligence of the released defendants remains an issue at the trial, since the remaining defendant is only entitled to a reduction if it is determined that the parties released were in fact joint tortfeasors. Harvey v. Travelers Insurance Company, supra; Wall v. American Emp. Ins. Co., 386 So.2d 79 (La.1980).
Under certain circumstances, the plaintiff's allegations of negligence and liability on the part of the released defendants may become binding on him. In Danks v. Maher, 177 So.2d 412 (La.App. 4th Cir.1965), the plaintiff brought a medical malpractice action against her doctor, the hospital, and their respective insurers. During the trial, just prior to the submission of the case to the jury, the plaintiff settled with and released the doctor and his insurer, reserving all rights against the hospital and its insurer. The Fourth Circuit held that the dismissal of the doctor so near the end of the trial unfairly shifted the burden of proving the negligence of the doctor from the plaintiff to the remaining defendants. Accordingly, the court found that the plaintiff was bound by her allegations of negligence on the part of the released defendant, and the judgment rendered against the hospital was reduced by one-half.
In the recent case of Raley v. Carter, 412 So.2d 1045 (La.1982) the Supreme Court made it clear that the reduction afforded the remaining defendants in Danks v. Maher, supra, is a remedy which should be granted in limited circumstances. In Raley, supra, the plaintiff brought a tort action against the job supervisor, safety officer, plant manager, and project manager of the company to whom his employer was under contract. On the morning of trial, the plaintiff, Raley, settled with and released all defendants except the job supervisor, Carter, and his insurer.
At trial, no evidence was presented to prove or negate negligence on the part of the released co-defendants. The trial court rendered judgment against Carter. Carter sought reduction of the judgment by 75% due to the fact that three of the four defendants had been released. The First Circuit held that the defendant was entitled to the requested reduction because the plaintiff was bound by his pleadings that the released co-defendants were joint tortfeasors. The Supreme Court reversed, finding that the defendants had a fair opportunity to establish fault on the part of the released co-defendants. The court held that the result reached in Danks, supra, was harsh and its application should be strictly limited to cases in which settlement is reached only after the commencement of trial.
In the present case, the remaining defendants, like those in Raley v. Carter, supra, had a fair opportunity to establish negligence on the part of the released codefendants. The settlement and release was given by the plaintiff five days before the commencement of trial, at which time the remaining defendants were notified of the release. The remaining defendants were not prejudiced by the release and the trial court was correct in disallowing a reduction of the judgment against the defendants.

AWARD OF INTEREST AGAINST AETNA FROM DATE OF JUDICIAL DEMAND
The trial judge awarded interest against Aetna, the plaintiff's uninsured motorist *1223 carrier, from date of judicial demand. In the recent case of Guidroz v. Tauzin, 413 So.2d 682 (La.App. 3rd Cir.1982), we held that a plaintiff is entitled to judgment against his own uninsured motorist carrier for interest only from date of judgment. We there observed that the action by the plaintiff was one in contract, and that the insurer's obligation to perform did not arise until there was a legal determination of the liability of the uninsured motorist and the extent of the plaintiff's damages.
In the present case, Aetna's liability under its contract was not determined until judgment was rendered finding first, that Mouton was liable, and second, that the plaintiff's damages exceeded Mouton's liability coverage. Because Aetna's liability arises in contract, the trial court erred in awarding interest against Aetna from the date of judicial demand.

AETNA'S THIRD PARTY DEMAND FOR INDEMNIFICATION
Aetna's third party demand for indemnification against Mouton, GEICO, and T & N Lone Star was dismissed by the trial court. Aetna asserts on appeal that it is entitled to recover any amount it is required to pay from the underinsured motorist, Robert Mouton. The question of an uninsured motorist carrier's right of subrogation to the rights of the insured was addressed by the Supreme Court in Bond v. Commercial Union Assurance Co., 407 So.2d 401 (La.1981). In that case, the plaintiffs sought damages for the wrongful death of their son against, among others, their uninsured motorist carrier, Lumbermens Mutual Casualty Company. Lumbermens filed a third party demand against Cindy Jack, the underinsured tortfeasor. The Supreme Court held that upon payment an insurer, pursuant to a subrogation agreement contained in the policy, becomes conventionally subrogated to its insured's right against the uninsured tortfeasor.
While the basis for the claim in Bond was a subrogation agreement in the policy, the Supreme Court also found a basis in the Civil Code for the insurer's right to subrogation:
"The codal precepts governing subrogation appear to be in complete accord with the purpose of the uninsured motorist statute. Under the Civil Code the uninsured motorist carrier who pays all of its insured's damages is completely subrogated to his claim against the uninsured or underinsured tortfeasor, but when he pays for only part of the damages sustained, the insurer receives a partial, subordinate subrogation. La.C.C. art. 2162; Southern Farm Bureau Casualty Ins. Co. v. Sonnier [396 So.2d (La.App.)], supra; see n. 1, supra. By allowing the insurer who either totally or partially pays the victim for the damages he has suffered a right of subrogation to his action against the uninsured or underinsured tortfeasor, the codal scheme promotes full compensation of accident victims by making the tortfeasors ultimately responsible for their delicts and thereby encouraging motorists to maintain adequate liability coverage. By giving the insured who has been only partially compensated for his loss a lawful cause of preference over the insurer for payment out of his debtor's property, the code further implements the object of the uninsured motorist statute, which is to promote full recovery for damages by innocent automobile accident victims by making both primary protection and excess coverage available."
In the present case, Aetna has been cast for only a portion of the plaintiff's damages. The underinsured motorist, Mouton, is indebted to the plaintiff for that portion of the damages which exceeds the insurance coverage. Thus, applying the principles of Bond, supra, Aetna is entitled to a partial, subordinate subrogation to the plaintiff's action against the underinsured motorist. The plaintiff, Ainsworth, retains a lawful cause of preference over Aetna for payment out of the property of the debtor, Mouton. Because Aetna is entitled to subrogation to the rights of the plaintiff, the trial court erred in dismissing Aetna's third party demand against Mouton.

*1224 QUANTUM
The appellants contend that the general damage award of $250,000.00 is excessive. Before an appellate court may disturb an award by a trial court, the record must clearly reveal that the trier of fact abused its discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), Clement v. Marion Corporation, 398 So.2d 130 (La.App. 3rd Cir.1981). For the reasons which follow, we hold that the trial court's award was not an abuse of discretion.
Denise Ainsworth was fourteen years old at the time of the accident. Immediately following the accident, she was taken to a Lafayette hospital, where she remained for approximately one month. For the first three weeks she was in a semi-comatose condition, during which time she never opened her eyes or uttered a sound. She underwent brain surgery to remove a blood clot that was pressing against her brain. When she regained consciousness, she was unable to speak or even make sounds voluntarily. At that point, Denise had to be treated as an infant in every way. She wore a diaper for two months following the accident. She began a painstaking process of rehabilitation in which she was required to relearn everything from infancy on up. Her progress was described by one doctor as remarkable. At the time of trial, she was a student at the University of Southern Mississippi.
While Denise's recovery was remarkable, it was, unfortunately, far from complete. Prior to the accident, in standardized tests administered at her school, she achieved a composite score in the 98 percentile field, indicating that she was functioning at an intellectual level shared by only one percent of the children in this country. Dr. James Blackburn, a psychiatrist, estimated her pre-accident I.Q. to be in the 130-140 range. The testimony showed that prior to the accident, while taking advanced courses, Denise was able to maintain a high grade point average with very minimal study. She was described as a brilliant, talented, outgoing, aggressive, and self confident young lady. Prior to the accident, Denise was very active. Her father described her as an excellent snow skier, horseback rider, softball player, and an accomplished dancer. She had studied dance since she was five years old. Her dance instructor during those years testified that Denise always excelled in dancing, having earned a teacher's certificate just prior to the accident. She stated that Denise was capable of becoming a professional dancer.
The record shows that following the accident, Denise was a changed person. The medical testimony indicates that she has a permanent neurological dysfunction and permanent mental impairment. Her composite score on the standardized test given in March of 1981 was in the 61 percentile field. Her I.Q. tested at 108-110. Denise encountered great difficulty in school, studying three to four hours per day to achieve average grades in her classes, some of which were remedial courses. While she successfully completed high school, she was able to do so only with great effort. Dr. Blackburn expressed doubt that she could be successful in college. He stated that the probability of her being able to keep a college course together, other than a very simple one, was nil.
Denise also has a permanent deficiency in physical coordination estimated at 15-20% which has seriously diminished her ability to dance. She has not regained her balance, and her stamina and endurance are greatly impaired. Her dance instructor testified that it will be impossible for Denise to pursue a professional dancing career. Denise's parents testified that following the accident, she became subdued and less interested in the various activities at which she excelled prior to the accident. They stated that she gets tired very quickly, and is weak to the point of being frail.
The medical testimony indicates that Denise's condition will probably not improve in the future. The mental and physical impairment is permanent. In addition, she has facial scars as a result of the lacerations she received in the accident. These are also permanent.
*1225 In sum, the record reveals that prior to the accident, Denise Ainsworth had enormous intellectual and physical potential. While she is still capable of functioning as a normal adult, she simply doesn't have the ability to realize the potential she once had. In light of this impairment, we feel that the award of general damages of $250,000.00 was well within the trial court's discretion.
For the reasons assigned, we affirm in part, reverse in part and recast the trial court judgment as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, Jack Ainsworth, individually and as the administrator of the estate of his minor daughter, Denise Ainsworth, and against defendant, Robert Mouton, as follows:

Medical and other special damages___ $ 23,510.09
General Damages (Pain, suffering,
mental anguish, distress,
disfigurement and the like)_________ 250,000.00

all with legal interest from judicial demand until paid. Of this amount, Government Employees Insurance Company is liable jointly, severally and in solido with Robert Mouton for the policy limits of $10,000.00 and for the judicial interest on $10,000.00 from date of judicial demand.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that plaintiff Ainsworth have judgment against defendant Aetna Casualty and Surety Company for such portion of the above set forth amounts as may represent the uninsured or underinsured portion thereof, not to exceed $100,000.00 with legal interest on such portion from the date of judgment until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of the City of Lafayette, Louisiana, Maryland Casualty Company and T & N Lone Star Warehouse Company d/b/a Southwest Scrap and Salvage Company, Inc., and against third party plaintiffs Aetna Casualty and Surety Company, Robert Mouton and Government Employees Insurance Company against the City of Lafayette and Maryland Casualty Company at the respective costs of Aetna Casualty and Surety Company, Robert Mouton and Government Employees Insurance Company.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of third party plaintiff, Aetna Casualty and Surety Company and against third party defendants, Robert Mouton and Government Employees Insurance Company, for all such sums as are paid by Aetna to plaintiff pursuant to the terms of the judgment, subject however, to the prior right of the plaintiff to payment from Mouton and GEICO of the total sum awarded plaintiff under this judgment, less such sum as Aetna pays to plaintiff as his uninsured motorist carrier, it being the intent of this judgment that the plaintiff retains a lawful cause of preference over Aetna for payment of the total amount of this judgment less such sum paid by Aetna to plaintiff, out of the property of the debtors, Mouton and GEICO. All liability of Government Employees Insurance Company under this judgment is limited to its policy limits of $10,000.00.
IT IS FINALLY ORDERED, ADJUDGED AND DECREED that the fees of the expert witnesses in this cause are fixed as follows:

Dr. Ronald Ritchey_______________ $150.00
Dr. Thomas Laborde_______________ 150.00
Dr. James Blackburn______________ 200.00
Dr. Louis Mes____________________ 250.00
Dr. Robert Rivet_________________ 250.00
Dr. Douglas Zarosinski___________ 250.00

and that these expert fees are taxed as costs; and that defendants Mouton, GEICO and Aetna pay all costs of these proceedings.
Aetna, Robert Mouton and GEICO are cast for all costs of this appeal.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
NOTES
[1] On appeal, the parties do not seriously question correctness of the trial court's finding that the accident in question was caused solely by the negligence of Simone Mouton.