595 So.2d 719 (1992)
Christine WAMBSGANS
v.
LIBERTY LLOYDS INSURANCE COMPANY, Prudential Property & Casualty Insurance Company and Shane K. Sensabaugh.
No. 91-CA-725.
Court of Appeal of Louisiana, Fifth Circuit.
February 18, 1992.
*720 David E. Kavanagh, James H. Minge & Associates, New Orleans, for plaintiff/appellee Christine Wambsgans.
Gwendolyn M. Hanhart, New Orleans, for defendant/appellee Liberty Lloyds Ins. Co.
McNeil J. Kemmerly, Metairie, for defendant/appellee Prudential Property & Cas. Ins. Co.
Dennis J. Phayer, New Orleans, for defendant/appellant Shane K. Sensabaugh.
Before KLIEBERT, GOTHARD and CANNELLA, JJ.
GOTHARD, Judge.
This case arises from a suit for damages resulting from an automobile accident that occurred on October 27, 1989 in Kenner.
Christine Wambsgans, a passenger in a car owned by James E. Caulfield, was injured when the car was struck by a vehicle owned and operated by Shane Sensabaugh. Sensabaugh's liability was stipulated. His car was insured by Liberty Lloyds Insurance Company ("Liberty"), with a policy limit of $10,000 per person. The Caulfield vehicle was insured by Prudential Property and Casualty Insurance Company ("Prudential") and carried uninsured/underinsured motorist coverage.
On January 16, 1990 Mrs. Wambsgans filed suit against Sensabaugh and Liberty and also against Prudential, from which she demanded underinsured and medical payments benefits under Caulfield's policy. Prudential answered and filed a cross-claim against Sensabaugh and Liberty, seeking recovery of payments made for damage to the Caulfield vehicle and for medical expense payment in the amount of $5,000; Prudential further demanded indemnity and contribution for any amounts Prudential might be found liable. On June 25, 1990 Prudential filed a supplemental and amending cross-claim, alleging that it had paid Mrs. Wambsgans $15,490.22 in addition to the $5,000 medical benefits and seeking recovery of that amount from Sensabaugh and Liberty.
On October 5, 1990 Mrs. Wambsgans executed a settlement and release of Liberty and Sensabaugh, in consideration of having received the policy limits of $10,000. On *721 October 8, 1990, the plaintiff executed a settlement agreement with Prudential for $35,490.42, acknowledging prior receipt of $20,490.42 and receipt of $15,000.00 on that day. Under the agreement she agreed to dismiss Prudential from her suit and assigned to Prudential any rights she might have against Sensabaugh or Liberty for payments made to her by Prudential.
Trial was held before a judge on November 26, 1990 on the issue of Prudential's cross-claim against Sensabaugh and Liberty. At the end of trial, the court dismissed the claim against Liberty, as it had paid the policy limits, and requested briefs on whether, based upon the evidence introduced at trial, Prudential was entitled to recover on its cross-claim from Sensabaugh the amount of $20,490.00, which had been paid under the underinsured motorist and medical benefits provisions of the policy. The court signed a judgment on January 25, 1991, in favor of Prudential for $20,490.00 plus legal interest from date of judicial demand of the cross claim and all costs, including an expert fee of $300.00. This appeal followed.
The issue presented is whether or not judgment in favor of Prudential was correct, when Wambsgans had executed a full release in favor of Sensabaugh on October 5, 1990 and her assignment of rights to Prudential took place on October 8, three days after she had released Sensabaugh.
Louisiana law provides that a UM carrier is subrogated to the rights of its insured against the tortfeasor to seek reimbursement of amounts which it paid to the insured under the insurance contract. Bosch v. Cummings, 520 So.2d 721 (La. 1988). A UM insurer is required to tender to its insured the reasonable amount which is due if its insured has shown that: he was not at fault; the other driver was uninsured or underinsured; and he was damaged. McDill v. Utica Mut. Ins. Co., 475 So.2d 1085 (La.1985). The tender, referred to now as a "McDill tender," must be unconditional and not made in settlement. Its purpose is for the insurer to show its good faith and to comply with its contractual responsibility under the policy, thereby avoiding statutory penalties for failure to pay. The trial judge in the case before us referred to Prudential's pre-release payment of $20,490.42 as a "McDill tender."
The appellant argues that the plaintiff's release of Sensabaugh on October 5, 1990 nullified any right of reimbursement Prudential might have had. The record is clear that Prudential made the payments before the release agreement and Sensabaugh's attorney stipulated to that fact at trial. Prudential's casualty consultant testified at trial that a check was issued on April 23, 1990 for $15,490.42 for general damages and medical expenses above the $5,000 paid previously. Prudential asserts no claim for the $15,000 paid in settlement on October 8, 1990.
The appellant bases his argument for the lack of subrogation on Prudential's failure to obtain an assignment of rights at the time it made the two pre-release payments. The law makes no such requirement when UM payment has been made prior to a release. The subrogation takes place by operation of law under the Louisiana Civil Code articles on subrogation, 1825-1830. The Supreme Court in Bosch v. Cummings, supra, at 733, explained:
... [W]hen the uninsured motorist insurer makes payment under its policy to its insured the carrier may become subrogated, under the general civil code articles on subrogation, in the measure of what it has paid, to the insured's right against the tortfeasor and his insurer, because this construction of the statute best conforms to the purpose of the law. Bond, [Bond v. Commercial Assur. Co., 407 So.2d 401 (La.1981) ] supra, at 409-411. Under these precepts, the uninsured motorist carrier who pays all of its insured's damages is completely subrogated to his claim against the uninsured or underinsured tortfeasor, but when he pays for only part of the damages sustained, the insurer receives a partial, subordinate subrogation. Bond, supra, at 411; So. Farm Bureau Cas. Ins. Co. v. Sonnier, 406 So.2d 178, 180 (La.1981). *722 In the Bosch case, before the UM carrier had made any payment to the plaintiff, the plaintiff released the tortfeasor and her insurer. The court, in holding that the UM carrier acquired no right of action against the defendant tortfeasor and insurer, stated that the carrier may acquire no right against the tortfeasor except what he may obtain from its insured upon payment under the UM policy; secondly, if the insured had discharged the underinsured tortfeasor and insurer before making any payment, the carrier would obtain no right of action against them. Bosch v. Cummings, supra, at 724.
In this case, Prudential made the payments for which it seeks reimbursement as a Mc Dill tender and prior to the plaintiff's settlement and release with the tortfeasor. Prudential did not lose its subrogation as to those payments and no formal assignment of rights was required.
Accordingly, we find no error in the judgment rendered by the trial court and affirm.
AFFIRMED.