UWATKINS, Judge.
The sole issue in this appeal is whether an uninsured motorist carrier is entitled to re-, cover, from a tortfeasor, the payments it made to its insured prior to the insured’s release of the tortfeasor. We affirm the trial court’s decision permitting recovery by the UM carrier against the tortfeasor.
FACTS
On April 20, 1991, the defendant, Sandra Nathan, struck the rear end of Mr. Byford McCreary’s vehicle while it was stopped at an intersection. The impact caused a chain reaction by pushing Mr. McCreary’s vehicle into the vehicle in front of him and that vehicle into the vehicle in front of it. On October 11, 1991, Mr. and Mrs. McCreary settled their claims against Ms. Nathan and released her from any further liability. On March 4, 1992, State Farm Mutual Automobile Insurance Company (State Farm), Mr. McCreary’s uninsured motorist carrier, filed suit against Ms. Nathan seeking to recover funds paid by State Farm to Mr. McCreary as a result of the accident. State Farm conceded that it could not recover any funds paid to Mr. McCreary after the settlement[2] and limited its claim to funds it paid to Mr. McCreary prior to the settlement and release. The defendant filed a reconventional demand against State Farm for filing a frivolous suit.
The trial court awarded State Farm the amount of $1,573.78, representing the amounts paid by State Farm to Mr. McCreary prior to the settlement, and dismissed the defendant’s reconventional demand.
The defendant appealed, alleging that the trial court erred in giving State Farm a greater right of action against the tortfeasor than its insured and in dismissing its recon-ventional demand. The defendant argues that State Farm is entitled only to reimbursement from the proceeds received by the McCrearys and has no independent right of action against appellant. We disagree.
The rights of a UM carrier to recover payments made to its insured are governed by LSA-R.S. 22:1406 D(4) which provides:
In the event of payment to any person under the coverage required by this Section and subject to the terms and conditions of such coverage, the | ^insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer.
Because of its inexplicit wording, the courts have interpreted this statutory provision in a way that best achieves the objective of Louisiana’s uninsured/underinsured motorist law, which is to promote full recovery for damages sustained by automobile accident victims and ensure that tortfeasors are ultimately held responsible for their delicts. This guiding precept was recognized in Bond v. Commercial Union Assur. Co., 407 So.2d 401 (La.1981), on rehearing, wherein the court applied the general laws of subrogation to allow a claim by a UM carrier against an uninsured tortfeasor for funds paid to its insured.
*712 In Bosch v. Cummings, 520 So.2d 721 (La. 1988), the court was presented with the issue of whether a UM insurer, that made payments to its insured after the insured entered into a settlement agreement with the tortfea-sor, had a direct cause of action against the tortfeasor for recovery of the amounts it paid. The court explained the basis of a UM insurer’s right of action against the tortfea-sor as follows:
An uninsured motorist insurance carrier does not acquire any right against a tort-feasor merely because the latter has committed an offense or quasi offense against the carrier’s insured. The uninsured motorist insurance statute does not grant or permit the UM carrier to have an independent right of action against the tortfea-sor. ...
However, when the uninsured motorist insurer makes payment under its policy to its insured the carrier may become subro-gated, under the general civil code articles on subrogation, in the measure of what it has paid, to the insured’s right against the tortfeasor and his insurer, because this construction of the statute best conforms to the purpose of the law. [Bond v. Commercial Union Assurance Co., 407 So.2d 401, 409-411 (La.1981), on rehearing.] Under these precepts, the uninsured motorist carrier who pays all of its insured’s damages is completely subrogated to his claim against the uninsured or underin-sured tortfeasor, but when he pays for only part of the damages sustained, the insurer receives a partial, subordinate subrogation. Bond, supra, at 411,[3] So. Farm Bureau Cas. Ins. Go. v. Sonnier, 406 So.2d 178,180 (La.1981). Because subrogation is a means of transferring an obligation under which one person is substituted to the rights of another, the uninsured motorist carrier by subrogation may acquire only whatever rights its insured has against the underinsured motorist or his insurer. [Note omitted.]
Id. at 722-724.
UThe court in Bosch concluded that the UM insurer had no right to recover from the tortfeasor because at the time the insurer made its payments to its insured the insured had already settled the claim against the tortfeasor and consequently subrogation could not take place because the insured had no rights to transfer to its insurer.
That situation does not exist in the instant case. Herein, State Farm is seeking recovery of payments it made to its insured prior to the settlement with the tortfeasor. This precise factual issue was addressed recently in Egros v. Pempton, 606 So.2d 780 (La. 1992), wherein the court permitted recovery by the UM insurer against a non-motorist tortfeasor for amounts paid to its insured prior to settlement with the tortfeasor. The court distinguished Bosch stating that “[t]his case does not present a situation where the insured settles with a tortfeasor before the UM insurer makes payment. There, the insured has no rights to which the UM insurer may become subrogated.” Egros, 606 So.2d at 784, n. 6. See also Serpas v. Ridley, 556 So.2d 184 (La.App. 5th Cir.1990), and Wambsgans v. Liberty Lloyds Ins. Co., 595 So.2d 719 (La.App. 5th Cir.1992).
Accordingly, for the reasons expressed, we affirm the judgment of the trial court. All costs of this appeal are to be paid by the defendant, Sandra A. Nathan.
AFFIRMED.

. Prior to trial, State Farm stipulated that it was not entitled to recover the amount of $8,291.00 it paid to Mr. McCreary after the settlement and release was executed. The only issue at trial was whether State Farm was entitled to recover the amounts it paid to Mr. McCreary prior to the settlement.

. The court in Bond explained that: "[s]ubrogation is a legal fiction admitted or established by law by virtue of which an obligation, extinguished with regard to the original creditor by payment which he has received from a third person, or from the debtor himself but with funds that a third person has furnished to that effect, is regarded as subsisting in favor of this third person who is entitled to assert, in the measure of what he has paid, the rights and actions of the former creditor." Bond, 407 So.2d at 408.